## COWDERY *v.* GREENLEE, and *vice versa.*

1. After a prospective purchaser of land under an executory contract of sale has pointed out his objections to the title and has declined to perform, for specific reasons assigned, he can not, in defense to a suit for damages for a breach of the contract, urge additional objections to the title which the owner was given no opportunity to meet, and which were known to such purchaser at the time the specific objections were made.
2. Under a stipulation that the purchase will be made unless the vendor's title be "legally insufficient" and he shall fail to protect the same within a reasonable time, it is not the right of the purchaser to demand a perfect record title or to refuse to pay the purchase-money simply because one of the muniments of title is a deed which is not attested in such manner as to entitle it to record, there being no pretense on his part that a failure to have it duly registered affected in any way the validity of the vendor's title.
3. The refusal of the purchaser to perform will not give to the owner the right to resell the land at the risk of the former and hold him liable for a deficiency in the price realized, the true measure of damages being the difference between the contract price and the market value of the land at the time of the breach.

Argued May 31,—Decided November 15, 1906.

Complaint. Before Judge Reid. City court of Atlanta. November 28, 1905.

The plaintiff, Mrs. Minnie D. Cowdery, declared on a written contract, signed by her and by the defendant, Mrs. M. H. Greenlee, for the sale by the former to the latter of a house and lot in the City of Atlanta. The agreed purchase-price was $4,200; the pur-

chaser to assume a loan of $2,500 which was an incumbrance on the property and to make a cash payment of $1,700. This agreement was made "subject to right of purchaser to investigate titles to the property and to decline to perform if title of the vendor [should] be legally insufficient and she [should fail] to perfect same within a reasonable time," and the writing contained a stipulation that the cash payment was to be made when the vendor complied with her "obligation to make satisfactory showing as to title." The contract was executed on May 12, 1904. The plaintiff alleged in her petition, that she "faithfully performed all the conditions to be by her performed, and did, on the 28th day of May, 1904, after allowing defendant a reasonable time to examine and pass on plaintiff's title, offer to convey title to said realty to defendant, subject only to the incumbrance mentioned in said written agreement," and did then tender to the defendant her warranty deed to the property, but the defendant declined to perform her obligations under the contract and failed and refused to pay the price agreed upon as the consideration of the sale. The plaintiff thereupon notified the defendant of her intention to proceed to resell the property at the defendant's risk and to hold her responsible for any loss or expense that might be incurred. On June 18, 1904, the plaintiff did sell and convey the premises to one Burnham for the sum of $4,000, which was the best price she was able to obtain for the property; and she sought by this suit to recover damages to the amount of $500, which represented the difference between the contract price the defendant had agreed to pay and the sum actually realized after deducting from the amount for which the property was resold the agent's commissions and lawyer's fees.

The defendant admitted in her answer that she had entered into the contract declared on, but insisted that the titles of the plaintiff were, for specified reasons, "legally insufficient and unsatisfactory to the defendant," and the plaintiff had refused to perfect the same. The defendant also pleaded in bar that the plaintiff had voluntarily released her from all obligation to perform the contract, the plaintiff saying a higher price had been offered for the property by another person who wished to buy it. By way of demurrer, the defendant raised the point that even if the plaintiff was entitled to recover anything under the allegations of her petition, which was denied, the items of loss therein set forth did not

constitute any legal or proper measure of damages for a breach of the contract. The demurrer was overruled, and the defendant filed exceptions pendente lite. The trial on the merits resulted in a judgment of nonsuit. Exception is taken by the plaintiff to this judgment, as well as to various rulings made during the progress of the hearing with regard to the admissibility of evidence offered by her for the purpose of showing title. The defendant, by cross-bill of exceptions, complains of the overruling of her demurrer to the plaintiff's petition.

It appeared, from the testimony of the plaintiff, that the defendant had declined to carry out the contract because her attorney raised certain objections to the plaintiff's title, one of which was that a deed to her from her husband, J. W. Cowdery, was not officially attested in such a way as entitled it to record. Another objection urged had reference to a suit by one Johnson against J. W. Cowdery respecting the line between the property of the former and that which the plaintiff had agreed to sell to the defendant. This suit, the plaintiff testified, had been wound up a year before the trade was made, and the sheriff had put Johnson in possession of the strip claimed by him some time before the defendant ever came to see the property. The plaintiff's immediate predecessor in title, J. W. Cowdery, went into possession under a deed from A. J. West to him, dated July 23, 1895, and remained in continuous possession until he sold and conveyed the property to her in 1899, when she entered and held it up to May, 1904. She undertook to carry the burden of showing a complete chain of title from the State down to her husband, and offered in evidence a deed to her, dated February 25, 1899, and admitted to record on March 3 of that year, headed "State of New Jersey, Somerset county," signed "J. W. Cowdery," and attested as follows: "Signed, sealed, and delivered in presence of: Frank W. Somers, County Clerk of Somerset Co.; Augustus Vanderveer." There was also on the deed the impression of a seal bearing the words, "Seal of the County of Somerset." The defendant objected to the admission of this deed, on the ground that it was not properly attested for record; and the plaintiff then offered in evidence certain general statutes of the State of New Jersey for the purpose of showing that the County Clerk of Somerset County was the clerk of a court of record, and that the seal affixed to the deed was the seal of a court of record.

The court, at the instance of the defendant, refused to admit this evidence or to allow the plaintiff to make similar proof by introducing the interrogations of the deputy clerk of Somerset county, N. J., respecting the character of the court of which the official witness to the deed was the clerk. The attorney who represented Mrs. Cowdery pending her negotiations with Mrs. Greenlee testified that when the attorney she had employed to investigate the title raised the objection that the deed was not properly attested, his attention had been called to the statutes of New Jersey making the county clerk the clerk of a court of record and the county seal the seal of a court of record. The presiding judge thereupon sustained the defendant's objection to the introduction of the deed, and granted her motion for a nonsuit.

*George Gordon* and *J. A. Branch,* for plaintiff.

*C. L. Pettigrew,* for defendant.

EVANS, J. (After stating the facts.)

1. It was not incumbent upon the plaintiff to show, as she undertook to do, that she had perfect title to the property which she had contracted to sell to the defendant. The refusal of the latter to carry out the contract was based upon two specific objections to the title, and all other objections which were known to the vendee and which might have been, but were not, urged against the sufficiency of the vendor's title, were waived. *Fenn* v. *Ware,* 100 *Ga.* 563; *Atlanta Trust Co.* v. *Close,* 115 *Ga.* 939; *Gavan* v. *Norcross,* 117 *Ga.* 363. "Where a party gives a reason for his conduct and decision touching anything involved in a controversy, he can not, after litigation has begun, change his ground and put his conduct upon another and different consideration. He is not permitted to thus mend his hold. He is estopped from doing it by a settled principle of law." 2 Herman on Estoppel, 947. This doctrine is especially applicable in a case such as the present, where the owner of property expressly stipulates in an agreement of sale that if the prospective purchaser finds any flaws in the title, he shall point them out to the owner and afford him a reasonable time within which to perfect his title. The evidence discloses, and the defendant in her answer admitted, that she declined to complete the purchase for two reasons, and for two reasons only; therefore she could not urge in defense to the suit any additional objections to the title, nor could she call upon the plaintiff to assume the

burden of proving that the title was without blemish. All it was necessary for the plaintiff to establish was that, under the terms of the written agreement, the defendant was unwarranted in declining to perform for either of the reasons assigned by her, and had, by waiving all other objections which might have been urged, relieved the plaintiff of all obligation to take further steps to comply with her original undertaking "to make satisfactory showing as to title." The plaintiff did show beyond question that there was no merit in the objection that she was not in a position to convey all she had contracted to convey, because of a suit brought against her immediate predecessor in title by an adjoining proprietor to settle the location of the dividing line between their lots. The case must accordingly be made to turn upon the question whether or not the plaintiff was under an obligation to meet the further objection that the deed made to her by her husband was not attested in such manner as to entitle it to record.

2. The purchaser did not stipulate in the written agreement that she was to get a perfect record title. On the contrary, she agreed to buy subject only to the condition that she should have the right to investigate the title and decline to perform if the vendor's title was found to be "legally insufficient" and she should fail to perfect it within a reasonable time. "A promise to convey a good title is always implied in an executory contract for the sale of lands, and a purchaser is never bound to accept a defective title, unless he expressly stipulates to take such title knowing its defects." 26 Am. & Eng. Enc. L. (2d ed.) 106. "But while a defect in the record title may, under certain circumstances, furnish a defense to the purchaser, there is no inflexible rule that a vendor must furnish a perfect record or paper title." Id. 107. A title dependent upon adverse possession under color of title is generally held sufficient, if there be no reasonable doubt as to the nature and duration of such possession and the title thereby acquired. Id. "The nature of the title which a vendor must be qualified to convey where a good title is implied or contracted for is frequently described as a 'marketable' title, or one free from reasonable doubt; that is, not only a title valid in fact, but one that can be again sold to a reasonable purchaser or mortgaged to a person of reasonable prudence. . . But while a purchaser will not be compelled to take a doubtful title, the doubt must be more than a bare possibility; it must be

a reasonable doubt." Id. 109-111. A title which exposes a vendee to litigation, because dependent upon a judgment which is not conclusive upon all persons at interest, has been held not to be marketable. Swayne v. Lyon, 67 Pa. St. 436. So, also, where the title is in doubt because it can not be ascertained whether an heir, who had suddenly disappeared and had not been heard from for a number of years, was in point of fact, as was supposed, no longer in life. Vought v. Williams, 120 N. Y. 253. However, the danger of litigation must be real or apparent, and be apprehended because of some irregularity in legal proceedings or sales made thereunder, or because of some matter of fact the real truth as to which can not be ascertained with reasonable certainty. 26 Am. & Eng. Enc. L. (2d ed.) 111. It has been held that a stipulation in a contract that the title of the vendor must be "first class" means simply that the title shall be marketable. Vought v. Williams, supra. Certainly, a stipulation that the purchaser will buy unless the title be "legally insufficient" means no more, and can not support the construction that the vendor undertook to sell a title which appeared perfect on the records, or to make a showing of title deeds which were entitled to record. In Carolina Savings Bank v. McMahon, 37 S. Car. 309, the Supreme Court of South Carolina ruled that: "A purchaser of land can not object to a deed in the muniments of his vendor's title because of the absence of the official title of the person before whom the probate was made, where there is sufficient evidence to show that such person was then an officer authorized to take affidavits." The objection urged against the deed was that it had "never been recorded according to law;" but the court held this was not such a defect in the title as would relieve the purchaser, it not appearing that any intervening rights of third persons had resulted therefrom. In the present case there is no pretense that the deed to the plaintiff from her husband did not pass title to her, or that, because of a failure to have it properly attested and put on record, she lost her right to assert title as against some one not affected with notice of her title. She merely obligated herself to make a satisfactory showing as to *title,* not to so perfect the record of her title that the muniments of title turned over to the purchaser could at any time be introduced in evidence in a legal proceeding without proof of their execution, under the provisions of our statute which declares that a registered deed is

admissible without any accompanying proof as to its genuineness. Counsel for the defendant in error cite a number of decisions of the New York courts. See Fleming *v.* Burnham, 100 N. Y. 1; Irving *v.* Campbell, 121 N. Y. 353; McPherson *v.* Schade, 149 N. Y. 16. The New York courts have declined to decree specific performance where there was a defect in the record title which could be supplied only by a resort to parol evidence, and there had not been an undisputed adverse possession for a sufficient time to give title thereby. The point raised is of the first impression in this State, and we decline to apply the New York rule in all its strictness. When the parties do not contract for a record title, we do not think that the title is to be rejected solely because a deed in the abstract of title, otherwise unobjectionable, is not attested so as to be recorded under the registry acts. The plaintiff in the present case is suing for damages for a breach of the contract. It was not necessary for her to show to the court that the title deed objected to had been properly attested for record, nor are we called on to decide whether it was or was not. Notwithstanding the rejection of this deed and the evidence offered in connection with it, the plaintiff made out a prima facie case for a recovery, and a nonsuit should not have been granted. The rejection of the deed did not injuriously affect her case, as she was under no obligation to prove its execution; the defendant, by waiving all objections to it except that it did not appear to be entitled to record, conceded it was what it purported to be, a genuine conveyance duly executed, effective as a muniment of title.

3. As the case is to be tried again, it is proper to pass on the merits of the defendant's demurrer to the petition. It set forth a valid and binding contract and alleged a breach thereof. Accordingly, the case should not have been dismissed on general demurrer, as nominal damages at least were recoverable for the breach. *Sutton* v. *Ry. Co.*, 101 *Ga.* 776. But by special demurrer to those paragraphs of the petition in which the plaintiff set forth her claim to special damages, the defendant made the point that this claim did not present the proper measure of damages, and the particular items of damages claimed were not legally recoverable. This objection to the plaintiff's pleadings was properly raised by way of demurrer. *Ripley* v. *Eady*, 106 *Ga.* 423. If sustained, the result would be, not to dismiss the plaintiff's action, but only to strike from her petition

her claim for special damages. The special demurrer should have been sustained. The correct measure of damages was the difference between the price agreed to be paid for the land and the value of the land at the time of the alleged breach. *Irwin* v. *Askew,* 74 *Ga.* 582; *Brooks* v. *Miller,* 103 *Ga.* 713. When land is sold at public outcry under legal process, or by an administrator, executor, or guardian, and the purchaser declines to comply with his bid, the land may be sold at his risk, and he will be liable for any deficiency in price arising from his refusal to perform. Civil Code, § 5466. Not so, however, when the purchaser of land under an executory contract of sale fails to comply therewith. The Civil Code, § 3551, providing for a resale of "goods" at the purchaser's risk, has no application to a case such as the present. In the case of *Ansley* v. *Green,* 82 *Ga.* 184, 92 *Ga.* 647, it appeared that land was sold at public auction, and this court held that there was no merit in a demurrer to the petition on the ground that "such suits can only be maintained against bidders at judicial sales." No point was made as to the proper measure of damages, and the case was decided upon the pleadings as they stood, attention being called to the conflict of authority upon the question whether the correct measure of damages was the loss arising from a resale of the land or the difference between the price bid at the first sale and the true market value of the land at the second sale. In *Gilbert* v. *Cherry,* 57 *Ga.* 130 it was expressly held that for a breach of an executory contract of purchase at private sale, the purchaser was liable for the difference between the market value of the land and the price he had contracted to pay. This decision was in accord with the view taken in other jurisdictions, that "in order that a vendee may be made liable for the difference between the price he agreed to pay and that realized on a resale, his agreement to purchase must have been made on that condition, unless the purchase was made at an official sale." 2 Suth. Dam. (3d ed.) § 570, p. 1613. The law as embodied in our Civil Code does not give to the vendor of land any right, under an executory contract not so conditioned, to re-sell at the vendee's risk, should he commit a breach of the contract, but this remedy is in terms restricted to cases where a bidder at judicial or quasi judicial public sale refuses to comply with his bid.

*Judgment, upon both the main and the cross-bill of exceptions, reversed. All the Justices concur.*