CHANDLER, Appellant, vs. GAULT and another, Respondents.

*May 1—June 5, 1923.*

*Specific performance: Discretion of court: Decree: Perfecting title as condition precedent: Vendor and purchaser: Abstracts: Objections: Waiver of right to rescind: Incumbrances: Open and notorious easements: Telephone lines.*

1. Whether a court of equity will grant a decree requiring specific performance of a contract rests largely in its sound discretion in view of all the circumstances, such discretion to be exercised. in accordance with established equitable principles.

2. When the vendor of lands furnishes an abstract within the time required, the purchaser must examine it and point out such objections as he intends to insist on.

3. Purchasers re-examining an abstract after judgment for the vendor in an action, brought at their suggestion, to quiet title to remove certain objections appearing upon the face of the abstract, and making no further objections to the title except to claim that the presence of a transformer and telephone line on the premises constituted an incumbrance, because of which they demanded an abatement from the purchase price, waived the right to rescind the contract for defects in the title.

4. An easement obviously and notoriously affecting the physical condition of land at the time of its sale is not embraced in a general covenant against incumbrances, whether it is a private or public easement.

5. A transformer and telephone line on property to be conveyed is not such an incumbrance as constituted a defect in the vendor's title, entitling the purchaser to rescind the contract or sue for breach of the covenants of seizin and against incumbrances, the presence thereof being sufficient to charge the purchaser with full knowledge of the character and nature of the easement, which was open, obvious, and notorious.

6. The vendor's title resting on a mere entry on public lands, the better practice is to require the vendor, as a condition precedent to a decree for specific performance, to complete the title by procuring and recording a certified copy of the patent, notwithstanding the purchasers waived their right to rescind the contract for defects in title or even to require the title to be perfected.

APPEAL from a judgment of the circuit court for Grant county: S. E. SMALLEY, Circuit Judge. *Reversed.*

Specific performance. On August 30, 1919, plaintiff was the owner of the lands described in the complaint, and on that day he and his wife executed an agreement by the terms of which the plaintiff was to convey the 160 acres to the defendants for the sum of $32,000, $1,000 to be paid at the time of the signing of the contract, $10,000 on March 1, 1920, when possession of the premises was to be given; the remainder, $21,000, was to be secured by a mortgage for five years, interest at five per cent., $1,000 or more to be payable on any interest date. By the terms of the contract plaintiff agreed to deliver an abstract showing clear title by March 1, 1920. On March 1, 1920, a deed was drafted which was signed by the plaintiff and his wife. The plaintiff had been unable to procure the abstract although it had been ordered; the defendants had not executed the mortgage required by the contract, and it was agreed that the defendants should pay $9,000 to the plaintiff and hold $1,000 to allow plaintiff a reasonable time to perfect his abstract and bring it down to date. The mortgage was left with the deed to be delivered with the $1,000 withheld when the title was perfected. The defendants went into possession of the farm and operated it through the season of 1920-1921. On March 1, 1921, the defendants paid the plaintiff the sum of $1,050, being the amount of the interest on the $21,000 remaining unpaid on the purchase price. The abstract was delivered shortly after March 1, 1920, was examined by attorneys representing the defendants, and was returned to the plaintiff for correction. Thereafter an action was begun in the circuit court for Grant county to quiet the title to the premises in the plaintiff. Judgment in the action to quiet title was entered May 24, 1921. About June 7, 1921, the abstract was delivered to the defendants and retained by them.

On the premises described in the contract there was on

August 30, 1919, a transformer used by the Mineral Point
Public Service Company, which had been on the premises
for six or seven years prior to the date of the contract, and
along the west half of the northern boundary of the tract
of land there was a telephone line carrying several wires,
the poles of which were outside of the fence along the
northern boundary. This telephone line had been erected
and was in operation for some years prior to the date of the
contract. It appears that the defendants at all times knew
of the presence of the transformer and of the telephone line,
and in the month of July or August the defendants for the
first time advised the plaintiff that they objected to the
presence of the transformer and they demanded that it be
removed or they be allowed some sum for damages for
its presence. On September 30, 1921, the defendants de-
posited $1,000 with the bank, to be paid to the plaintiff when
he, removed the transformer or paid damages for its pres-
ence. No settlement was made, and on January 18, 1922,
the plaintiff tendered a warranty deed of the premises to
the defendant *Charles Bunt,* who acted for both of the de-
fendants, and upon his refusal to complete the transaction
this action was begun. The court found in favor of the de-
fendants upon the disputed questions of fact. The findings
relating to the transformer, telephone. line, and abstract are
as follows:

"That for a period of over seven years a public utility
operating in Montfort and vicinity has been in open and
adverse possession of a parcel of ground located in the north-
east corner of the tract agreed to be conveyed, on which it
has built a transformer carrying high-tension wires, two of
which cross over the land above described. That one half
of said transformer stands upon the land agreed to be con-
veyed and one half on the highway abutting said land, and
that all the land so occupied is securely inclosed by a fence
and is 16 x 17 ft. 2 in. in area, 8 x 17 ft. 2 in. being on the
land agreed to be conveyed. That said transformer is located
seventy-five feet west of the northeast corner of the land

agreed to be conveyed, and that said high-tension wires over the land agreed to be conveyed, above mentioned, extend from said corner to said transformer.

"That Wisconsin Telephone Company owns an easement which is in writing duly executed so as to entitle it to be recorded, and that the same was recorded in the office of the register of deeds of Grant county, Wisconsin, on the 30th day of July, 1912, in volume 176 of Deeds, on page 454, and that said easement is expressly made binding by its terms upon the heirs, successors, and assigns of the parties and that said easement is as follows:

" 'To erect and maintain its poles, wire, anchors, and other appliances necessary in the conduct of its business along the highway adjoining the land owned by the undersigned, and described as follows: The southeast ¼ of sec. 25, township of Wingville, Grant Co., Wis., to trim at any time all trees beside the line along the land above described so as to clear the wires at least three feet, to cut down any present or future trees or portions of trees located beneath and which may in the judgment of the Telephone Company interfere with the wires or other equipment placed as above mentioned.'

"That the presence of said transformer and the right to trim and cut down any present or future trees made the sale of lots impossible and prevented the use of the premises by the defendants in the manner contemplated at the time of the sale.

"That the abstract of title finally presented to defendants fails to show the recording of any patents to any of the land agreed to be conveyed, or that any patent had ever been issued for the northeast quarter of the southeast quarter of said section.

"That said abstract shows that one John Thompson with one David Thompson entered the west half of the southeast quarter of said section and that there is no conveyance on record as shown by the abstract to the premises just described from said John Thompson or his wife. That said John Thompson and wife are joined in the action to quiet title aforesaid, but that service was by publication and that the year in which to appeal and answer the complaint herein has not expired.

"That according to said abstract an undivided one-third.

interest in the land described in the complaint was deeded to Roxy Bardelaben and fails to show any conveyance from said Roxy Bardelaben. That said abstract does show an attempted conveyance from one Roxy De Bardelaben, but that the same is not witnessed or acknowledged.

"I find that the plaintiff did not procure and present an abstract of title within a reasonable time after March 1, 1920, and that defendants by reason of such delay were unable to resell said land or any part thereof, and that from March 1, 1920, until June, 1921, the market value of said land, as well as the demand for its purchase, decreased.

"I find that at no time has the plaintiff presented defendants with an abstract showing clear title."

The court found the reasonable rental value of the land for the year 1920 to be $1,280, and for the year 1921 $1,120; that the defendants had placed improvements upon the land to the reasonable value of $499.50; that the defendants had paid taxes levied upon the premises to the amount of $557.15; that the defendants were awarded judgment against the plaintiff for the sum of $1,000 with interest at six per cent. from August 30, 1919; the sum of $9,000 with interest at six per cent. from March 1, 1920; the sum of $499.50 for improvements; the sum of $557.15 with interest, being the amount of taxes paid; the sum of $1,050 with interest, less the sum found by the court to be the reasonable rental value of the premises with interest. Judgment was entered accordingly, from which plaintiff appeals.

For the appellant there were briefs by *McGeever & McGeever* of Dodgeville, and oral argument by *W. C. McGeever* and *James D. McGeever*.

For the respondents there was a brief by *Kopp & Brunckhorst* of Platteville, and oral argument by *L. A. Brunckhorst* and *Arthur W. Kopp*.

ROSENBERRY, J. The action was begun by the plaintiff for specific performance of the contract. Whether or not a court of equity shall grant a decree requiring specific per-

formance of the contract is a matter which rests in the sound discretion of the court in view of all the circumstances, such discretion to be exercised in accordance with established equitable principles. *Woldenberg v. Riphan,* 166 Wis. 433, 166 N. W. 21, and cases cited.

Some observations as to the mutual duties and obligations of vendor and purchaser may not be out of place. By the terms of the contract the vendor was required to furnish an abstract showing a clear title. By agreement of the parties the time within which the abstract was to be furnished was extended and the vendor duly furnished the abstract. It thereupon became the duty of the purchaser to make an examination of the abstract and point out such objections, if any, as he intended to insist upon. *Easton v. Montgomery,* 90 Cal. 307, 27 Pac. 280; *Cowdrey v. Greenlee,* 126 Ga. 786, 55 S. E. 918, 8 L. R. A. n. s. 137.

The abstract was returned in May, 1920, with the suggestion that the vendor should bring an action to quiet title to remove certain objections appearing upon the face of the abstract. The vendor brought this action, judgment was rendered in May, 1921, and thereupon the abstract was again delivered to the purchasers, who had it re-examined but made no objection to the title, except it was their claim that the presence of the transformer and the telephone line constituted an incumbrance and that they would not complete the contract unless the plaintiff (vendor) would allow some abatement from the purchase price. They made no further objection to the title until after this action was begun. If the objection relied upon by the defendants was not valid, by this course of conduct they undoubtedly waived the right to rescind the contract by reason of any defects in the title. *Cowdrey v. Greenlee,* 126 Ga. 786, 55 S. E. 918, 8 L. R. A. n. s. 137; Maupin, Marketable Title to Real Estate (3d ed.) p. 190, § 80, and cases cited; *Kentucky D. & W. Co. v. Blanton,* 149 Fed. 31; *Kane v. Jones,* 46 Wash. 631, 91 Pac. 2; *Lang v. Hedenberg,* 277 Ill. 368, 115 N. E. 566.

We shall next consider whether or not the presence of the transformer and the telephone line constitutes an incumbrance so as to make the title proposed to be conveyed by the plaintiff defective.

In *Kutz v. McCune,* 22 Wis. 628, it was held that "An easement obviously and notoriously affecting the physical condition of land at the time of its sale is not embraced in a general covenant against incumbrances."

In some jurisdictions a distinction has been drawn between public and private easements, it being held that a public easement is not an incumbrance and that a private easement is. In *Kutz v. McCune,* however, the court said:

"In the case of the highway the doctrine does not rest upon the fact that the right is in favor of the public, but that the easement is obvious and notorious in its character, and that therefore the purchaser must be presumed to have seen it, and to have fixed his price for the land with reference to its actual condition at the time."

In *Huyck v. Andrews,* 113 N. Y. 81, 20 N. E. 581, *Kutz v. McCune* was severely criticised. Nevertheless it has been adhered to and states the law as it now exists in this state. The court having placed it upon the ground that an easement was not an incumbrance where it was of an obvious and notorious character, the rule applies to private as well as to public easements. The reason of the rule applies in this case. It was conceded that the purchasers knew at the time they entered into the contract of the presence of the transformer and of the telephone line, and while the evidence shows that the company maintaining the telephone line had a right to trim trees, it is a matter of common knowledge in this section of the country that the right to maintain such lines is usually and customarily accompanied by the right to trim trees to prevent contact with wires. Certainly, the presence of the line was sufficient to charge the purchasers with full knowledge of the character and nature of the easement, it being open, obvious, and notorious. So it is con-

sidered in this case that the presence of the transformer and of the telephone line constituted no incumbrance, in the legal sense, within the meaning of the term as used in the contract. That an easement is an incumbrance, of course cannot be denied; but where it is open, obvious, and notorious, it is not such an incumbrance as constitutes a defect upon the vendor's title; nor can the purchaser under a warranty deed with full covenants maintain an action for breach of the covenants of seizin and against incumbrances by reason of the existence of such an easement.

The objections made by the defendants were therefore without merit. Having accepted and retained the abstract without making any other objection to the title, within the doctrine of the cases heretofore cited they certainly waived the right to rescind the contract for any defects in the title.

It appears, however, that as to the northeast quarter of the southeast quarter, being one-fourth part of the lands agreed to be conveyed, the abstract disclosed the following: "United States of America to David Thompson. Entry: Date of sale May 2, 1850." There is no reference to a register or receiver's receipt or other evidence showing that the purchase price had been paid to the government or that the government has in any way parted with its title.

In *Fenn v. Holme,* 21 How. (62 U. S.) 481, and *Day v. Mountin,* 137 Fed. 756, 764, it is held that a plaintiff cannot maintain an action of ejectment upon a title resting upon a mere entry. While the defendants have waived their right to rescind the contract and might be held to have waived their right to require the title to be perfected, we think it the better rule and the sounder practice that the plaintiff be required to complete the title by procuring a certified copy of the patent and having the same recorded, and upon doing so, within a reasonable time, the plaintiff will become entitled to have the contract specifically performed as prayed in the complaint.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings as indicated in this opinion.