SCHOOL DISTRICT No. 5, TOWN OF HULL, Respondent, vs. KNITTER and wife, Appellants.

*April 11—May 6, 1924.*

*Easements: Implied reservation in warranty deed: Prescriptive right to cross schoolhouse premises: Adverse user: Evidence: Sufficiency.*

1. A grant of land for a schoolhouse site, with the usual warranty of title, containing no mention of a private road across it, is construed not to include by implication a reservation thereof. p. 663.
2. Although more than twenty years ago the grantor of such site, across which there was a private roadway, quitclaimed to another a right of way across his land on such roadway "down as far as the schoolhouse," such grant and the user of the road across the school site for a period of time less than twenty years are *held* not to sufficiently show an adverse user under the statutes. p. 663.
[3. Whether an absolute right against a school district can be ac- quired by adverse user of an easement over premises used for a school site, not determined.] p. 664.

APPEAL from a judgment of the circuit court for Portage county: BYRON B. PARK, Circuit Judge.  *Affirmed.*

In 1865 one Mathias Brill purchased two tracts of farm land, the south half of the southwest quarter and the west half of the southwest quarter of the southeast quarter of section 2, town 24, range 7 east, in said county.  A public highway was and is on the south line of such property.  The dwelling then and thereafter occupied on such farm was on the larger and westerly of the two tracts.  From as early as 1873 there was a continuously traveled private road from such dwelling to the public highway over the land in said southwest quarter, and reaching the same by crossing the extreme southwest corner of the smaller of these tracts, and it continued to be used until 1919.

In 1882 Brill conveyed to the school district a square acre of land in the southwest corner of the southwest quarter of the southeast quarter of said section 2 "to be used for a schoolhouse site, and in case at any time said land shall cease to be used for that purpose, this deed to be void and land to revert," etc.  This conveyance contained the usual warranty of perfect and absolute title and made no mention of the private road.  Immediately upon receiving such deed the school district built its schoolhouse about fifteen feet north of its south line and of the public highway and about midway between its north and south lines and has continued to use it as such ever since then.  The private road entered near the northwest corner of this acre, ran diagonally and fifty feet north of the schoolhouse, and crossing the south line about twenty feet north of the southeast corner of the acre and then to the public road.

Two years thereafter said Brill by quitclaim deed conveyed to one Rutta, then living to his north, the following: "A right of way one rod wide for the purpose of passing over both on foot or with team, commencing at . . . [Rutta's residence] and running southeasterly *through the southwest quarter* of section 2, town 24 north, of range 7 east,

as far east as the residence and inclosure around the buildings of . . . [Brill] and down as far as the schoolhouse situated on said land on the route now and heretofore used by said parties and to be used by said party of the second part [Rutta], without any unnecessary prejudice or inconvenience to party of the first part." It made provisions as to bars or gates not material here. This conveyance was recorded.

In 1885 Brill sold his interest in all of the two tracts, and subsequently the defendants became the owners and continued in possession.

During defendants' possession and in 1902 a fence was erected almost parallel with and running ten or fifteen feet north of this road and clear across the acre. Another fence was built in 1912 south of such road, cutting off a narrow strip along the north side. Defendants pastured their cattle upon such inclosures and cut down and removed some large pine trees.

In 1918 the school district directed the closing of such road across its acre and the removal of the fences.

Subsequently this action was brought to recover possession of the two inclosures; damages on account of the prior use; for the injury to the real estate; and for an injunction restraining the defendants from making any use of said acre or of the said roadway.

A jury having been waived, the court found, among other things, that for a number of years, though considerably less than twenty years, prior to 1882 the defendants' grantor had used such road across the acre and that there was a well defined traveled track across the same when plaintiff acquired title in 1882. That the defendants constructed the fences on said acre and continued in possession of said inclosures without right. That the defendants destroyed the fences constructed by plaintiff and asserted their intention to continue to use the said road.

The judgment gave damages of $200 for the destruction

of the trees; held plaintiff entitled to possession of the whole of said acre; and perpetually enjoined defendants from using any part of said acre so long as it was used for a schoolhouse. From such judgment defendants have appealed.

For the appellants there was a brief by *Fisher & Cashin* of Stevens Point, and oral argument by *W. E. Fisher*.

*Geo. B. Nelson* of Stevens Point, for the respondent.

ESCHWEILER, J. The defendants on this appeal now limit it to the sole question as to whether or not the judgment below was wrong in excluding them from using the traveled track or roadway across the school acre.

It is contended that there was a reservation of such traveled track, then plainly visible, by implication in the deed from Brill to the school district in 1882, or else that the continuous user of such roadway by defendants and their predecessors gave absolute title to such an easement as against the plaintiff.

On the first of these propositions defendants rely upon the case of *Kutz v. McCune,* 22 Wis. 628. There a conveyance was made of a tract of land with usual covenants against incumbrances. Some thirty acres thereof were flowed, under prescriptive right, by a mill pond created by a dam on lands not owned by that defendant. The action was brought for breach of the covenants. It was held that such incumbrance or easement, being obvious and notorious in character, must be presumed to have been seen by the purchaser and considered by him in fixing the price, as much so as though it had been a public highway, and the rule was declared that such a purchase would be under the natural presumption that it is made subject to outstanding rights that the physical condition obviously indicates, though there be no exceptions or reservations concerning them in the deed. A similar ruling has been made as to railway or

other highways in use as such on the land at the time of the sale and that such constitute no breach of the usual covenants. *Smith v. Hughes,* 50 Wis. 620, 627, 7 N. W. 653. Also that a transformer and a telephone line on the property, though incumbrances, are not such as can be considered defects in the vendor's title entitling the purchaser to rescind. *Chandler v. Gault,* 181 Wis. 5, 11, 194 N. W. 33.

Clearly Brill in 1882, then owner of the entire property, with title absolute, could not assert such an easement in favor of one part of his holdings as against another part by mere user. When he conveyed to plaintiff there was no prescriptive right to such way in any other person, because the earliest date of its use, under the testimony, was in 1873. No contention is or could be made that this was a way by necessity. There was therefore no existing legal visible burden upon this acre when purchased by plaintiff.

Defendants further insist that continuous user without objection from plaintiff of this road, after the quitclaim by Brill to Rutta in 1884 of a right of way and which is set forth in the statement of facts, forecloses the plaintiff from the right to the relief given by the court below in closing this way. This quitclaim, however, by its terms refers to property in the southwest quarter of the section, where Brill and Rutta lived, and does not expressly purport to convey any rights to property across the north and south quarter line of the section, where the school acre lay. It did not purport to give any right of way to the public road, but expressly limited it to "down as far as the schoolhouse." This left a gap unconveyed between the schoolhouse and the south line of the school acre and also on the small strip south of that acre still belonging to Brill and crossed by this private way before reaching the public road.

In view of the language of the quitclaim to the right of way, especially when considered in connection with the conveyance by Brill but two years before to plaintiff, the quit-

claim must be construed to have conveyed to the north line of plaintiff's acre and no further. From that point it was but about 160 feet directly south over Brill's land to the same public highway.

Whether as against the plaintiff carrying on a governmental function an absolute right can be acquired by adverse user to any such an easement as is claimed by defendants, is unnecessary to determine, for under the record here, no sufficient showing of adverse user under any of the statutes has been made.

*By the Court.*—Judgment affirmed.