Kons, Appellant, vs. Pallange, Respondent.*

*October 11—November 9, 1943.*

---

* Motion for rehearing denied, with $25 costs, on January 18, 1944.

For the appellant there was a brief by *John A. Lonsdorf* and *Edward J. Byrne,* both of Appleton, and oral argument by *Mr. Lonsdorf.*

*William E. Burke* of Milwaukee, for the respondent.

MARTIN, J.  In 1929 defendant platted a tract of land in the township of Neenah, Winnebago county, Wisconsin, known as "Airport Heights."  There were one hundred ninety-one lots in the plat of which fifty-nine were sold on land contracts, including the several lots sold to plaintiff, prior to the foreclosure proceedings, to which reference will be made. Plaintiff purchased three lots on land contracts bearing dates January 2, 21, and February 21, 1930; and a fourth lot on oral agreement made sometime between January 3, 1930, and January 4, 1934, for an agreed consideration of $295, which plaintiff alleges he has paid.  Plaintiff did not record his land contracts.  The contracts called for certain down payments, balance in monthly instalments, with the provision that all unpaid balances, principal and interest, become due and payable at the expiration of three years from date.

On May 19, 1930, defendant Pallange and Julia Pallange, his wife, mortgaged all the real estate located in Airport Heights to Henry H. Held and Margaret Held, his wife, to secure the payment of their note of said date in the sum of $9,500, payable on or before three years from date with interest at the rate of six per cent per annum payable semi-annually.  This mortgage was recorded in the office of the register of deeds of Winnebago county on May 20, 1930. This mortgage contains the following provision:

"It is specifically agreed by the parties of the second part [Henry H. Held and Margaret Held, his wife] that they will, upon demand of the parties of the first part [John G. Pallange

and Julia Pallange, his wife], execute partial releases of mortgage, as applying against said above-mentioned mortgage of $9,500, upon payment to them by the party of the first part, of the sum of $2.50 per foot frontage other than a highway, and $5 per foot frontage on the highway; the intention of the party of the first part being to subdivide the above-described property into city lots of usual size and the purpose of this paragraph in this mortgage being to enable said party of the first part to deliver a clear abstract of title, free from all incumbrances, and warranty deed to purchasers of said lots when they are entitled thereto. It is to be further understood and agreed that such payments of $2.50 per foot and $5 per foot, respectively, afore-mentioned shall be applied as part payments of principal of said mortgage of $9,500."

There is no evidence of the dimensions of any of the lots purchased by plaintiff. If we were to assume that sixty feet was the usual width of a city lot and further assume that all of plaintiff's lots had frontage on the highway, if defendant had applied plaintiff's down payments on the respective lots he would have been entitled to a partial satisfaction of the Held mortgage as to such lots. We do not hold that defendant was obliged to make such application of the plaintiff's down payments, but he had the right to do so and secure releases of the lien of the mortgage and thereby be in a position to give plaintiff a clear title on payment of the purchase price.

On or about April 4, 1932, plaintiff learned of the existence and lien of the Held mortgage against all of the Airport Heights real estate; also learned that certain mechanics' liens had been filed. Plaintiff and his wife then went to Milwaukee for a conference with defendant relative to said incumbrances. It appears that at that time plaintiff had a purchaser for two of the lots. He told the defendant that he was then prepared to pay the balance of the purchase price of the two lots and wanted to get a warranty deed from defendant and wife. As to this conference plaintiff testified:

"*Q.* Mr. Kons, what did Mr. Pallange say about the title? *A.* Well, he said he couldn't give me a title at the time I was over at his house.

"*Q.* In what year was that? *A.* That was in 1932.

"*Q.* Did you talk about any reasons why he couldn't give you title? *A.* Well, I told him I had the money; I could pay up the several lots in full at that time and transfer them and sell them.

"*Q.* . . . Did he say why he couldn't give you title? *A.* No, sir, he didn't say why."

It should be noted that at that time plaintiff could not put defendant in default under the terms of the land contracts because the balance of the purchase price did not become due and payable until three years from the date of the respective contracts. There was no provision in any of the contracts which gave plaintiff the right to tender the balance of the purchase price and demand deeds. Plaintiff could not at that time have maintained an action against defendant for an anticipatory breach of any of the land contracts. At that time there was no renunciation of the contracts by defendant. We think it clear that the trial court erred in holding that plaintiff's cause of action as to the three written contracts accrued in 1932. That is the sole ground on which the court nonsuited plaintiff as to his first three causes of action. The court, in granting the nonsuit, relied on the decision in *Estate of Hanlin,* 133 Wis. 140, 113 N. W. 411; but the facts in that case are not applicable here. In the instant case no deed was given, only contracts for deeds. There were no covenants against incumbrances to which the rule in *Estate of Hanlin* could be applicable. In that case the court held that there is a technical breach of the covenant against incumbrances in a conveyance of real estate, in case of there being an outstanding mortgage upon the property, *as soon as the deed is delivered,* but that it only gives rights to an action by the cove-

nantee for nominal damages. The court further held that in case of conveyances of land with full covenants, and there being an outstanding mortgage, no action lies for substantial damages in advance of an eviction, or the owner of the land entitled to the benefit of the covenant paying off the incumbrances.

Respondent argues that the decision in *Bishop v. Genz*, 212 Wis. 30, 31, 248 N. W. 771, sustains the judgment of nonsuit in the instant case. It is there said:

"It is elementary that a statute of limitations begins to run against a remedy at the time when the cause of action accrues, and that 'a cause of action accrues where there exists a claim capable of present enforcement, a suable party against whom it may be enforced, and a party who has a *present* right to enforce it.'"

That is a correct statement of the law but it is not applicable to the facts here. As stated above, in 1932 plaintiff had no right of action for an anticipatory breach or otherwise that he could have maintained against defendant.

Following the conference of plaintiff and defendant at Milwaukee in April, 1932, on June 29, 1932, defendant wrote plaintiff, in which letter he referred to a certain lawsuit then pending in the circuit court at Oshkosh against one Harvey Fox, in the trial of which defendant wanted plaintiff to be a witness. We quote from the letter as follows:

"Then after that suit, which we hope to win, I'll have clear title and will be able to give you clear title *and we will come together on the price of the lots.* . . .

"You go see George Mayer and whatever you and he can agree on will be satisfactory for George is an honorable man. He is my agent there now and the only one. . . .

"You and I will come to a satisfactory agreement for you are an honorable man and I try to be honest also."

We find nothing in the record to indicate that defendant's lawsuit against Fox had any connection with defendant's

ability or inability to give plaintiff at that time or any subsequent time clear title to the lots covered by the land contracts. There is no evidence that defendant was in a position at any time between the recording of the Held mortgage and the foreclosure thereof to furnish clear title to any of the lots in question.

Foreclosure of the Held mortgage was commenced April 3, 1934. Plaintiff was not made a party. In connection with that action, on May 4, 1934, defendant Pallange petitioned the circuit court for Winnebago county for the appointment of his agent, George J. Mayer, as receiver. On May 26, 1934, the court appointed Mr. Mayer as receiver. Among other things the order provides:

"It is further ordered that the said receiver, George J. Mayer, immediately take charge of said property [all of the property in Airport Heights plat], revalue the lots, and make a schedule of same for the purpose of immediate sale of the lots. That thereupon, he be and hereby is authorized and empowered to sell to the public any and all of said lots, and to use the usual and customary manner and methods for such sale, in order to complete the sale or sales at the earliest possible time. Further, the said receiver is hereby authorized, empowered and directed to give a receiver's deed for each lot as sold."

The purpose in the appointment of a receiver was apparently to marshal the assets, not only for the benefit of the plaintiffs in the mortgage foreclosure proceedings and other lien holders who were made parties defendant, but also for the benefit of all persons to whom Pallange had sold lots. On May 29, 1934, the receiver wrote Kons in part as follows:

"The writer has just been appointed receiver for the Airport plat, just outside of the city of Neenah. . . .
"The receiver has instructions to proceed at once to straighten out matters and reduce prices on the lots so they can be sold.

"Any person who has made any sort of payment on his lot has protection under the receiver and will receive full credit on his lot for such payments. I wish you would come to the office at your earliest opportunity and convenience, bringing your contract along, so that a new receiver's contract can be issued to you, and you will receive credit on the same for any payments you have so far made."

Kons, relying on that part of Pallange's letter of June 29, 1932, quoted above, and wherein he said, "You go see George Mayer and whatever you and he can agree on will be satisfactory," did call on the receiver. In their conference the receiver informed Kons of his instructions to revalue all the lots in Airport Heights plat. On the basis of the revaluation of the lots Kons had then overpaid to the extent of $210. To adjust this difference the receiver proposed that if Kons paid the further sum of $45 he would give him a receiver's deed conveying an additional lot, and the three lots included in the land contracts, also the fourth lot involved in the oral agreement, on the purchase price of which Kons had paid $295. The receiver's deed is not in evidence, but it appears to be conceded that such a deed was given on December 4, 1934.

Judgment was entered in the foreclosure action on the 9th day of February, 1935. It was in usual form, but contained the following provision:

"It is further ordered, that George J. Mayer may continue to act as receiver in the manner in which he has been acting since May 26, 1934."

We assume this provision was inserted for the protection of all interested parties during the redemption period. The sheriff's report of sale shows that he conducted same on the 25th day of April, 1936; that he first offered the lots separately for sale; that the lots were bid in at various amounts by defendant Pallange "as agent for certain principals undisclosed to me and that the total amounts bid for said various lots was not sufficient to pay in full the judgment costs and expenses

of sale pursuant to said judgment;" that he then offered the premises for sale in their entirety; that said premises were then struck off and sold to the plaintiffs in the foreclosure action for the sum of $10,407.15, plus the sheriff's expenses of sale and unpaid taxes in the sum of $151.07, which the plaintiffs assumed and agreed to pay, they being the highest bidders therefor. He further reported that he had then executed and delivered to the clerk of the circuit court for Winnebago county the usual and lawful deed of conveyance of the premises to the purchasers. The sheriff's report of sale was confirmed by order of the court dated October 31, 1936. It appears that plaintiff was in possession of the lots in question from on or about the respective dates of his contracts until he was evicted following the completion of the foreclosure proceedings in 1936.

On September 3, 1938, the receiver made a final report to the court of his doings as receiver. It appears from his report that subsequent to the foreclosure proceedings plaintiffs in that action made certain adjustments with some of the persons to whom Pallange had sold lots, and gave them deeds. While the evidence is not clear, we assume that the deeds were given to those persons who had recorded their land contracts prior to the recording of the Held mortgage. As to others, including Kons, they refused to be bound by the Pallange contracts or the receiver's deed. They contended that both the land contracts and the receiver's deed constituted clouds upon their title, and that the foreclosure proceedings had cut off any right or interest Kons had by virtue of the Pallange contracts or the receiver's deed. The receiver's deed to Kons was vacated and canceled by order of the court dated September 22, 1938.

Regardless of the receiver's revaluation of the lots, on the basis of which Kons had paid in full, and regardless of the receiver's deed, the evidence discloses that Pallange at no time prior to the entry of the order confirming the sheriff's report of sale was in a position to give Kons a warranty deed of the

lots in question, free and clear of incumbrances. Under these circumstances, Kons was not required to continue the instalment payments on the purchase price as originally agreed. Where the vendor cannot convey title as agreed by the contract of sale, the vendee may refuse further payments of the purchase price and recover the amounts paid thereon. See *Neff v. Rubin,* 161 Wis. 511, 515, 154 N. W. 976; *Breen v. Arnold,* 157 Wis. 528, 531, 147 N. W. 997. Plaintiff in the instant action seeks recovery of $1,568 paid on the purchase price of the lots covered by his contracts.

Until the expiration of the redemption period in the Held foreclosure action, Pallange, of course, had the right to redeem. Up to that time Kons thought he was protected by the receiver's deed, and, aside from his premature demand for a deed in 1932, he made no further demands on Pallange for a deed. Pallange made no demands on Kons that would put him in default. Under the circumstances, we are of the view that plaintiff's cause of action accrued as of October 31, 1936, being the date of the order confirming the sheriff's report of sale, which is also the date of plaintiff's eviction from the premises. We find no grounds on which the judgment of nonsuit can be sustained. There must, therefore, be a new trial of the action. ·

*By the Court.*—Judgment reversed. Cause remanded with directions to vacate the judgment of nonsuit, and to enter an order granting a new trial.