MAY, Respondent, vs. LATHERS, Appellant.*

*May 2—June 6, 1950.*

* Motion for rehearing denied, with $25 costs, on September 6, 1950.

192

The cause was submitted for the appellant on the brief of *Aberg, Bell, Blake & Conrad* of Madison, and for the respondent on the brief of *McGowan, Geffs, Geffs & Block* of Janesville.

MARTIN, J. Plaintiff-respondent's right to recover his down payment and other moneys does not require him to show that the contract under which he agreed to purchase appellant's land was invalid. We may assume that the contract met all legal requirements and still affirm the judgment of the trial court because of appellant's inability to perform his contractual obligations.

On March 9, 1948, plaintiff May caused to be served on Lathers, by service on his wife, a notice of rescission of the contract, specifying the following grounds:

(a) Failure to convey to plaintiff May by warranty deed two hundred forty acres of land, as per the agreement.

(b) Failure to deliver possession of the land on March 1, 1948.

Prior to the meeting on March 1, 1948, on February 25, 1948, defendant delivered two abstracts to plaintiff, which plaintiff had delivered to a law firm for examination. One of the abstracts showed title to approximately two hundred acres in E. R. Boynton and Mae C. Boynton, and showed defects relating to a right of way, natural-gas pipe-line easement, and disclosing that no examination was made on the question of the 1947 taxes. The other abstract showed approximately forty acres in the name of William Lathers and disclosed that no examination was made on the question of the 1947 taxes, and it was subject to an exercised right-of-way option to Natural Gas Pipeline Company.

At the meeting on March 1, 1948, defendant testified that he had a warranty deed from Boynton and his wife running to plaintiff for approximately two hundred acres, and his own warranty deed for forty acres. Defendant stated that he offered the deeds to plaintiff, but Halstad, plaintiff, and Ed. May, Sr., testified that they never saw the deeds, and that no offer was made by defendant. The three agree that the nature of the discussion with defendant was that he was to get a deed from the Boyntons to himself, and give his own deed for the two hundred forty acres to plaintiff.

It was held in *Petre v. Slowinski* (1947), 251 Wis. 478, 483, 29 N. W. (2d) 505, that where no provision indicating the character of the title is made in a contract for the sale of real estate, the law implies that the vendor is to convey a marketable title free from incumbrances, and in such case the purchaser is entitled to the statutory warranty deed provided for in sec. 235.06, Stats.

In *Douglass v. Ransom* (1931), 205 Wis. 439, 444, 446, 237 N. W. 260, it is stated:

"The failure to show freedom from tax liens was of itself sufficient to render the title not merchantable. . . . It is not the fact that the grantor has good title, but the appearance of that fact of record, that renders a title merchantable. . . .

"What constitutes a marketable or merchantable (the terms are synonymous) title to real estate has been considered by this court in several cases. . . . A material defect is such as will cause a reasonable doubt and just apprehension in the mind of a reasonably prudent and intelligent person, acting upon competent legal advice, and prompt him to refuse to accept it. If such doubt exists as to make the title subject to probable attack by legal proceedings, or depends upon facts which can only be established by parol evidence if attack is made upon it in such proceedings, the title is not marketable. . . . A marketable title must be salable without abatement of price and salable on the face of the record."

Plaintiff received an opinion on the abstracts from his attorneys on March 8, 1948, and rescinded the contract on March 9, 1948. Defendant asserts that he was entitled to a reasonable time to correct the abstracts and relies on *Chandler v. Gault* (1923), 181 Wis. 5, 194 N. W. 33, but the facts in that case are different from the instant case in that it deals with a transformer, poles, and wires which had been on the land for six or seven years and were open to view. The complaining party had notice of these and made no objection but took possession of the property without protesting. This was held to constitute a waiver, if it be considered the poles, etc., constituted an incumbrance.

It was held in *Kons v. Pallange* (1943), 244 Wis. 64, 72, 11 N. W. (2d) 634, that where the vendor cannot convey title as agreed by the contract of sale, the vendee may refuse further payments of the purchase price and recover the amounts paid thereon.

And, further, the agreement contains the phrase "possession March 1, 1948." It was an essential part of the agreement that the plaintiff was to have possession of the premises

on that date. Defendant's proposition that plaintiff bought the farm subject to existing tenancies is in conflict with the agreement which expressly states "possession March 1, 1948" and does not state that it is subject to existing tenancies. The property in question here consisted entirely of farm lands and possession becomes especially important.

It is stated in 66 C. J., Vendor and Purchaser, p. 987, sec. 707:

> "And a covenant in the contract of sale requiring the vendor to give the purchaser possession on a certain day obligates him to do so even though the purchaser had knowledge of a third person's occupation thereof." See also 57 A. L. R. 1493; *Smith v. Glenn* (1905), 40 Wash. 262, 82 Pac. 605; 55 Am. Jur., Vendor and Purchaser, p. 663, sec. 198.

It is defendant's contention that plaintiff's payment of $1,250 to defendant on March 1, 1948, for lime, fertilizer, plowing, and seed, waived plaintiff's right to insist upon possession on that date for plaintiff knew that the tenant, Harold Prebe, was in physical possession of the farm and Coats in possession of the residence. However, plaintiff, Ed. May, Sr., and Halstad testified that defendant made the statement at the Rockford conference that the plaintiff could have possession right then, March 1, 1948.

When plaintiff drafted the notice of rescission on March 9, 1948, the tenants were not moving right out as defendant had represented at the Rockford meeting; the tenants were in possession; defendant had not returned in a "few" days as he told them at Rockford and had written on March 2, 1948; defendant had not started an eviction suit against Coats to remove him from the house, and the trial of his eviction suit against Prebe had been postponed until March 31, 1948.

Defendant's brief states that "Lathers has refused to recognize the validity of May's rescission." Notwithstanding this, on June 4, 1948, defendant entered into a new lease with Prebe, extending Prebe's term until December 1, 1948, and no action was commenced to move Coats from the house.

Prebe continued in possession of the farm until December 1, 1948, and Coats continued occupying the house until January, 1949. The abstracts were introduced in evidence at the trial and the objections which we have set forth had not been corrected.

Defendant contends that at the March 1, 1948, conference the deal could not be closed because plaintiff's loan had not come through and plaintiff's attorneys had not yet examined the abstracts. However, the evidence shows that plaintiff was prepared to pay regardless of the loan. Although plaintiff's attorneys had not written a formal opinion, plaintiff had talked with them and informed defendant of the gas pipe-line easement, the lack of acreage, and defendant's lack of title.

The deal could not be closed on March 1, 1948, because defendant did not have a merchantable title, could not give possession of either the farm or house, and did not have title to two hundred acres and could not give a warranty deed.

Plaintiff was not in default because he did everything that the contract required him to do. He was entitled to rescind the contract and recover the payment made thereon.

*By the Court.*—Judgment affirmed.