Taxman, Plaintiff and Appellant, v. McMahan and wife, Defendants: Harrigan, Defendant and Respondent.

*October 2—October 29, 1963.*

216

218

For the appellant there was a brief by *M. J. Levin,* attorney, and *James S. Levin* of counsel, both of Milwaukee, and oral argument by *James S. Levin.*

For the respondent there was a brief by *Shea & Hoyt,* attorneys, and *Ralph M. Hoyt* of counsel, all of Milwaukee, and oral argument by *Ralph M. Hoyt.*

CURRIE, J. The sole issue on this appeal is whether existing easements and a party wall known to the purchaser are title defects within the meaning of a covenant against incumbrances contained in an executory contract for the sale of real estate.

We consider that the instant party wall stands in the same category as the three easements with respect to the issue before us. The rights created by a party-wall agreement are merely a particular form of easement. *Duncan v. Rodecker* (1895), 90 Wis. 1, 4, 62 N. W. 533; *Christensen v. Mann* (1925), 187 Wis. 567, 204 N. W. 499, 41 A. L. R. 1192; *S. S. Kresge Co. v. Garrick Realty Co.* (1932), 209 Wis. 305, 311, 245 N. W. 118, 85 A. L. R. 283; 69 C. J. S., Party Walls, p. 2, sec. 1; 2 Thompson, Real Property (1961 Replacement), p. 591 *et seq.,* sec. 396.

The purchaser stresses the fact that, while he knew of the existence of the party wall prior to submitting his offer to purchase, he did not then know of the affirmative covenants of the party-wall agreement with respect to construction and

repair. However, such covenants in party-wall agreements are very common and are usually to the mutual advantage of both owners. Some courts have held, in the absence of such a covenant, that there is a duty to contribute to cost of necessary repair and maintenance. 3 Tiffany, Real Property (3d ed.), p. 350, sec. 810, footnote 77. It seems inconceivable, therefore, that the instant purchaser, knowing of the existence of the party wall before submitting his offer to purchase, could assume there was no liability on the part of the sellers, or their assigns, to share in the cost of construction and maintenance. We hold that knowledge of the existence of a party wall carries with it constructive knowledge of any affirmative covenants of the party-wall agreement by which it was created, and which are the customary and ordinary provisions of such an agreement. See Party Walls, 15 Missouri Law Review (1950), 259, 270. There is nothing of an unusual or extraordinary nature about the affirmative covenants of the instant party-wall agreement.

Easements generally constitute incumbrances within the meaning of a covenant against incumbrances. 4 Tiffany, Real Property (3d ed.), p. 135, sec. 1004. A party wall, where there is a covenant to maintain and rebuild the wall between the adjoining owners, constitutes an incumbrance which will render title to real estate defective. *Bennett v. Sheinwald* (1925), 252 Mass. 23, 147 N. E. 28; *Feder v. Solomon* (1925), 3 N. J. Misc. 1189, 131 Atl. 290, affirmed (1926), 103 N. J. L. 183, 134 Atl. 917; 3 American Law of Property, p. 137, sec. 11.49; 4 Tiffany, Real Property (3d ed.), p. 141, sec. 1005.[1]

---

[1] However, a party wall may not be considered a defect in title where there is no covenant to repair or rebuild, since the detriment sustained by each estate in becoming servient to the other is compensated by the benefit it derives from having the other made equally servient to it. *Mohr v. Parmelee* (N. Y. 1878), 11 Jones & Spencer 320; Anno. 64 A. L. R. 1479, 1502; 3 American Law of Property, p. 137, sec. 11.49.

Wisconsin early recognized an exception to the foregoing rule, namely, that an easement which is fully known to a purchaser before he makes his contract of purchase, or which is so open, obvious, and notorious that he must have known of it, is not an incumbrance within the meaning of such a covenant. This exception was first announced in *Kutz v. McCune* (1868), 22 Wis. 598 (\*628). In that case plaintiff purchased a tract of land, a portion of which was overflowed by a millpond, the milldam owners having acquired a prescriptive right to flow the land. Plaintiff brought suit for breach of the warranty deed's covenant against incumbrances. The court held that there had been no breach of this covenant and stated (p. 599 (\*628, \*629)):

"It [the flowage easement] may have been an incumbrance. But there is a principle recognized by adjudged cases, and resting upon sound reason and policy, which holds that purchasers of property obviously and notoriously subjected at the time to some right of easement or servitude affecting its physical condition, take it subject to such right, without any express exceptions in the conveyance; and that the vendors are not liable on their covenants by reason of its existence."

In *Chandler v. Gault* (1923), 181 Wis. 5, 194 N. W. 33, this principle was reaffirmed and made applicable to a provision in a land contract which required the seller to deliver to the purchasers an abstract showing "clear title." The land was subject to easements for the maintenance of a transformer, telephone poles, and wires. The easement in favor of the telephone utility also authorized the trimming of trees. The purchasers at the time they entered into the land contract knew of the presence of the transformer and the telephone line, but apparently had no actual knowledge of the tree-trimming rights which went with the telephone easement. The purchasers refused to accept title and the seller brought an action for specific performance. The court

in its opinion pointed out that it was common knowledge that the right to maintain telephone lines is usually and customarily accompanied by the right to trim trees in order to prevent contact with the wires, and that the presence of the line was sufficient to charge the purchasers with full knowledge of the character and nature of the easement. The rationale of the decision on the issue of whether the easements constituted incumbrances which would prevent clear title passing to the purchasers was thus stated (p. 11) :

"So it is considered in this case that the presence of the transformer and of the telephone line constituted no incumbrance, in the legal sense, within the meaning of the term as used in the contract. That an easement is an incumbrance, of course cannot be denied; but where it is open, obvious, and notorious, it is not such an incumbrance as constitutes a defect upon the vendor's title; nor can the purchaser under a warranty deed with full covenants maintain an action for breach of the covenants of seizin and against incumbrances by reason of the existence of such an easement."

The last sentence of the above-quoted extract from *Chandler v. Gault, supra,* was recently quoted with approval by this court in *Merchandising Corp. v. Marine Nat. Exchange Bank* (1960), 12 Wis. (2d) 79, 84, 106 N. W. (2d) 317, in which this court held that where property at time of purchase is subject to an easement which is open, continuous, and notorious, the purchaser cannot ground an action for breach of a covenant against incumbrances upon such easement. For other applications of this principle by this court, see *Smith v. Hughes* (1880), 50 Wis. 620, 7 N. W. 653; and *Wisconsin Central R. Co. v. Schug* (1914), 155 Wis. 563, 145 N. W. 177, which involved easements in the form of railroad rights-of-way.

Counsel for the plaintiff contends that all of the foregoing Wisconsin cases should be distinguished from the instant appeal on the ground that the court in each was dealing with

an executed contract, and because the purchasers had taken possession prior to the institution of court action. Reliance is placed upon the following statement which appears in *May v. Lathers* (1950), 257 Wis. 191, 195, 43 N. W. (2d) 15:

"Defendant asserts that he was entitled to a reasonable time to correct the abstracts and relies on *Chandler v. Gault* (1923), 181 Wis. 5, 194 N. W. 33, but the facts in that case are different from the instant case in that it deals with a transformer, poles, and wires which had been on the land for six or seven years and were open to view. The complaining party had notice of these and made no objection but took possession of the property without protesting. This was held to constitute a waiver, if it be considered the poles, etc., constituted an incumbrance."

The decision in *Chandler v. Gault, supra,* rested upon two grounds: (1) That there had been a waiver of the right to rescind the contract for defects in title by the purchaser's only requesting an abatement of purchase price when voicing an objection to the easements; and (2) an easement obviously and notoriously affecting the physical condition of land at the time of its sale is not embraced in a general covenant against incumbrances, whether it is a private or public easement. The above quotation from *May v. Lathers, supra,* had to do with the first and not the second of these two grounds. Even then a careful reading of *Chandler v. Gault, supra,* will disclose that even with respect to the first ground of decision the element of change of possession is not mentioned as a determinative factor.

The rule enunciated in *Kutz v. McCune,* and reaffirmed in the later cited cases, does not rest upon waiver based on the conduct of the purchaser occurring after the making of the covenant against incumbrances. Instead it is based on an interpretation of the covenant itself which in turn is grounded on an assumed reasonable intention of the parties,

that the parties could not have contemplated that an easement fully known to the purchaser, or which is so open, obvious, and notorious that he should have known of it, is an incumbrance within the meaning of the covenant.

Counsel for the plaintiff purchaser further points out that this rule was criticized in *Huyck v. Andrews* (1889), 113 N. Y. 81, 20 N. E. 581, and that 4 Tiffany, Real Property (3d ed.), p. 144, sec. 1008, states such rule to express a minority view. We do not consider that the wisdom of the rule is an issue to be passed on. The members of the legal profession of this state, who are conversant with this court's decisions in the field of real-property law, have long been familiar with the rule. They have drafted contracts for sale of real estate and warranty deeds in reliance that this rule was the law. If it is the intention of the purchaser and seller that the seller is to assume the duty of securing the termination of an easement, of a kind which is embraced within the rule, the contract of purchase must affirmatively state such duty.

One of the guidelines to be observed by an appellate court in considering whether to depart from *stare decisis* is that a principle of law, in the nature of a rule of property, once well established, should be adhered to. *Bullis v. Schmidt* (1958), 5 Wis. (2d) 457, 463, 93 N. W. (2d) 476; *Wisconsin Power & Light Co. v. Beloit* (1934), 215 Wis. 439, 445, 254 N. W. 119; *Thorndike v. Milwaukee Auditorium Co.* (1910), 143 Wis. 1, 15, 126 N. W. 881. See also Chamberlain, *Stare Decisis* (1885), p. 20. The reason for this is that people in their business transactions should be entitled to justifiably rely on such rules of property.

*By the Court.*—The order appealed from is affirmed.