## TUGGLE v. GREEN & SONS.

1. Where in a contract for the sale of goods the purchaser agrees to make a partial cash payment of the price, and to give his note for the balance, the seller to retain title until the full purchase-money is paid, and the contract provides that should the purchaser refuse to pay and settle according to the terms stipulated, then the full amount of the purchase-price shall at once be due and payable, and that in addition to whatever other remedies the seller may have he may store and retain the goods for the purchaser at his risk, and proceed to recover the entire price, any law to the contrary notwithstanding: *Held*, that, upon such refusal by the purchaser, the seller could store the goods for the use of the purchaser and maintain against him an action for the purchase-price.

(a) The Court of Appeals, when this case was first before that court. (*Tuggle* v. *Green*, 21 *Ga. App.* 723, 94 S. E. 908), did not hold contrary to the foregoing ruling.

(b) In such a case storage of the goods by the seller through his attorney to whom the warehouseman's receipt was issued, and notice given by the attorney to the purchaser that the goods had been so stored at his risk, would be a sufficient compliance by the seller as to the storage of the goods to enable him to sue for their price.

2. Where the purchaser sent to the seller a telegram stating his ground of objection for refusing the goods, and refusing to give his note for the price, this amounted to a waiver of other objections of which he then had knowledge and which he could have urged.

No. 1753. AUGUST 14, 1920. REHEARING DENIED SEPTEMBER 20, 1920.

The Court of Appeals certified to the Supreme Court the following questions (in Case No. 10459):

" A written contract for the sale of parts and accessories of a soda fountain was made between Green & Sons as sellers, and H. C. Tuggle as purchaser. Under the contract, the purchaser was to make a partial cash payment upon delivery of the goods. The contract further provided as follows: ' I/we agree to execute and deliver notes, when presented, either before or after shipment, irrespective of delivery or transfer of title, waiving examination, together with a good and valid chattel mortgage or such other papers as may be necessary under the laws of this State, to secure the title to said goods in you [the seller] until fully paid for, it being understood and agreed that the title to and ownership of said goods and the right of possession shall remain in you until payment of the price in full, and the receipt by you at your office in Philadelphia of the full amount of purchase-money.' The contract also provided that:, ' Should I/we by our neglect or refusal

to pay and/or settle as agreed above, thereby wrongfully refuse to perform the condition upon which time is granted, it is agreed that [if] the consideration for the grant of time fails, that the full amount of the purchase-price shall at once be due and payable, and that, in addition to any other remedies you may have at law, you may store and retain the property for me/us, at my/our risk, retaking possession, if already delivered, and proceed, at your option, to recover the entire price, any law, usage, or custom to the contrary notwithstanding.' When the goods were shipped to the purchaser, a bill of lading, with a draft for the amount of the initial payment attached, was sent to a bank at Stone Mountain, with instructions to the bank to have the accompanying conditional-sale notes properly executed and lodged for record at least one day before the bill of lading was delivered. Upon the tender by the bank of the draft with bill of lading attached, payment was refused, and the goods were declined by the purchaser, he sending to the seller the following telegram: 'We will not sign notes on fountain until same is installed satisfactory, neither will we pay draft on bill lading, as our agreement with Mr. Hoover was that we were to pay next installment five per cent. when fount was put up. Arrange accordingly, as fount is in our depot, subject to your orders and expense.' The contract of purchase and sale did not provide that the goods purchased under the contract should be installed by the seller. Upon such refusal and notice, the seller shipped the fountain to Atlanta for storage with the Morrow Transfer & Storage Co., paying the charges therefor, and taking from the storage company a receipt for the goods issued in the name of the attorneys for Green & Sons, the sellers, and notified Tuggle in writing as follows: 'We beg to inform you that the soda fountain bought by you from Robert M. Green & Sons has been stored with the Morrow Transfer & Storage Company at your risk of fire, deterioration in value, etc. Particularly the fountain is not insured against fire.' Green & Sons then brought suit under the provisions of section 4131 of the Civil Code (1910) for the entire purchase-price of the goods, alleging in part as follows: '4. That your petitioners according to the terms of said contract thereupon stored said soda fountain for the use of H. C. Tuggle, notified him thereof, and elected to sue for the entire price, $650.00, less the payment of $32.50 made with the order.' They also in-

clude in the suit their claim for freight and storage charges. In the first trial the plaintiff did not show any tender of the goods by the seller to the purchaser, except the original one made on terms of the buyer's compliance with the contract, nor did the seller at first trial make any proof of its storage of the property, in the manner as above set forth, with the Morrow Transfer & Storage Co. On the first trial the court directed a verdict in favor of the plaintiff; and upon exceptions being taken to this court, this action on the part of the trial judge was reversed, and the case sent back for another trial. In the former adjudication by this court it was held: 'Before suit against the purchaser for the entire purchase-price of goods shipped by common carrier as in this case can be maintained by the seller, title must be relinquished by the seller and must pass to the purchaser. The seller can not retain the goods and also recover the full price.' *Tuggle* v. *Green & Sons*, 21 *Ga. App.* 723. In the opinion of this court there was embodied that portion of the contract above set out, as follows: ' Should I/we by our neglect or refusal to pay and/or settle as agreed above, thereby wrongfully refuse to perform the condition upon which time is granted, it is agreed that [if] the consideration for the grant of time fails, that the full amount of the purchase-price shall at once be due and payable, and that, in addition to any other remedies you may have at law, you may store and retain the property for me/us, at my/our risk, retaking possession, if already delivered, and proceed, at your option, to recover the entire price, any law, usage, or custom to the contrary notwithstanding;' and after quoting this portion of said contract this court used the following language: ' When the goods in this case were shipped, the bill of lading, with a draft for the [amount of the initial payment of the] purchase-price attached, was sent to a bank at Stone Mountain, with instructions to the bank to have a certain conditional-sale contract, which was sent to the bank with the draft, 'properly signed, witnessed, and acknowledged, and lodged for record at least one day before delivery of B/L.' All of this indicated the unequivocal intention of the sellers to retain title to the goods until payment of the draft. *Georgia, Fla. & Ala. Ry. Co.* v. *Blish Milling Co.*, 15 *Ga. App.* 142 (2), 147 (82 S. E. 784); *Cartersville Grocery Co.* v. *Rowland*, 17 *Ga. App.* 42 (86 S. E. 402); *Ware* v. *Chason*, 14 *Ga. App.*

47 (80 S. E. 21); *Southern Railway Co.* v. *Strozier,* 10 *Ga. App.* 159 (73 S. E. 42); *Delgado Mills* v. *Georgia R. &c. Co.,* 144 *Ga.* 175 (2) (86 S. E. 550); Civil Code (1910), § 4131. "It is well settled that when the seller of personal property takes from the carrier a bill of lading therefor to his own order, and attaches it to a draft drawn on the buyer, this is a declaration on the part of the seller that he does not part with the title to the goods shipped, but retains the title until the draft which is sent with the bill of lading is accepted and paid; and when the title is thus reserved, the carrier is usually the agent of the seller, and not of the buyer, and the risk is the seller's, and not the buyer's. *Erwin* v. *Harris,* 87 *Ga.* 333 (13 S. E. 513), and authorities cited in the body of the opinion." *Moss* v. *Sell,* 8 *Ga. App.* 591 (70 S. E. 18). "Where parties enter into a written contract for the purchase and sale of a chattel, before the seller can maintain an action for its agreed price there must be such delivery, actual or constructive, as will pass the title and vest the ownership of the property in the purchaser. *Oklahoma Vinegar Co.* v. *Carter,* 116 *Ga.* 140 (42 S. E. 378, 59 L. R. A. 122, 94 Am. St. R. 112). Where the contract is that the defendant is to make a partial cash payment and give notes for the balance, the seller retaining the title until the full purchase-money is paid, a tender on terms of the buyer's compliance with the contract will not have the effect of transferring the title to the buyer. If the buyer refuses to make the partial cash payment and give notes as called for by the terms of the sale, or to accept any possession or control of the property, no title passes to him, and the seller's remedy is not for the purchase-price of the chattel, but for the breach of the contract. *Dilman* v. *Patterson Produce &c. Co.,* 2 *Ga. App.* 213 (58 S. E. 365); Tufts *v.* Grewer, 83 Me. 407, 412 (22 Atl. 382)." *Bridges* v. *McFarland,* 143 *Ga.* 583 (85 S. E. 856). The agreed statement of facts not showing that title to the property had passed to the purchaser, or that the goods had been stored for his use, the sellers could not recover the full purchase-price, and, there being no evidence as to the amount of freight, storage, and drayage paid, the plaintiffs failed to prove their case as laid, the court erred in directing a verdict, and the judgment must be reversed.'

"On the second trial the evidence was substantially the same,

except that proof was made that the property was stored as above set forth in the name of the attorneys for Green & Sons, such a receipt being given therefor, and notice of such fact given to Tuggle in the terms of the letter above quoted, it being also then testified to by the officials of the storage company that 'As to whether or not under our contract, the storage contract of the Morrow Transfer Company, they would let Mr. Tuggle have that soda fountain of Robert M. Green & Sons without an order from them or their attorneys, Little, Powell, Smith & Goldstein, well, if Mr. Tuggle came for the soda fountain, he would have to surrender that receipt, or have an order from the people to whom the receipt was issued, in order to get the soda fountain.' The record pertaining to the second trial does not disclose any tender of the goods by the seller to the purchaser, except the original one made on terms of the buyer's compliance with the contract. On the second trial the judge again directed a verdict in favor of the plaintiff, to which action on his part exceptions are now taken.

"1. Under the law of the case as previously determined by this court, is it true, notwithstanding the quoted provisions contained in the contract of purchase and sale, that, before suit against the purchaser for the entire purchase-price of the goods could be maintained by the seller, the title to the goods must have been actually or constructively passed from the seller and the ownership vested in the purchaser?

"2. If the answer to the foregoing question be in the affirmative, did the storage of the goods by the seller, in his name and under his control, with the notice to the purchaser as above set forth, operate to meet the requirements of the law just indicated?

"3. If the answer to the first question be in the negative, would the provisions of section 4131 of the Civil Code (1910), requiring the seller to store or retain the property for the vendee before he can sue for the entire purchase-price, be obviated by any provision of the contract of purchase above quoted; and if not, would the storage of the goods by the seller, in his name and under his control with the notice to the purchaser as above set forth, operate to meet the requirements of this section of the code?

"4. If, under the law of this case, or under the law of the code-section referred to, the storage of the property as made by the seller in his own name and under his own control, with the

notice to the purchaser as above set forth, was sufficient to authorize the bringing of a suit for the entire purchase-price, would the sending of the telegram above quoted have the legal effect of limiting the refusal of the buyer to sign the notes, as tendered under the terms of the written order, to the one special ground stated in the telegram, so as to waive and exclude all other grounds or objections which an examination of the order, and the notes as tendered, might have disclosed?"

*L. J. Steele, Scott Candler,* and *L. G. Fortson,* for plaintiff in error.

*Little, Powell, Smith & Goldstein* and *Moise & Riddell,* contra.

FISH, C. J. Of course, the decision of the Court of Appeals, when it was first before that court (*Tuggle* v. *Green,* 21 *Ga. App.* 723, 94 S. E. 908), included in the foregoing statement, is the law of the case, and, as between the parties, is conclusive upon all points there presented and decided. *Western & Atlantic R. Co.* v. *Bank,* 125 *Ga.* 489 (54 S. E. 621); *Southern Bell Tel. Co.* v. *Glawson,* 140 *Ga.* 507 (79 S. E. 136); *Morrison* v. *Slaton,* 148 *Ga.* 294, 297 (96 S. E. 452). The answers to the questions certified depend, therefore, upon what was then decided by the Court of Appeals. The headnote, prepared by the court, to the opinion rendered is as follows: "Before suit against the purchaser for the entire purchase-price of goods shipped by common carrier, as in this case, can be maintained by the seller, title must be relinquished by the seller and must pass to the purchaser. The seller can not retain the goods and also recover the full price." In the opinion it is said: "Where the contract is that the defendant is to make a partial cash payment and give notes for the balance, the seller retaining the title until the full purchase-price paid, a tender on terms of the buyer's compliance with the contract will not have the effect of transferring the title to the buyer. If the buyer refuses to make the partial cash payment, and give notes as called for by the terms of the sale, or to accept any possession or control of the property, no title passes to him, and the seller's remedy is not for the purchase-price of the chattel, but for the breach of the contract." This language is taken from *Bridges* v. *McFarland,* 143 *Ga.* 581, 583 (85 S. E. 856), which is cited, as well as *Dilman* v. *Patterson Produce Co.,* 2 *Ga. App.* 213 (58 S. E. 365), and *Tufts* v. *Grewer,* 83 Me. 407 (22 Atl. 382).

The Civil Code, § 4131, provides: " If a person refuses to take and pay for goods bought, the seller may retain them and recover the difference between the contract price and the market price at the time and place for delivery; or, he may sell the property, acting for this purpose as agent for the vendee, and recover the difference between the contract price and the price on resale; or, he may store or retain the property for the vendee and sue him for the entire price." In *Bridges* v. *McFarland,* and in *Dilman* v. *Patterson Produce Co.,* supra, as well as in *Maddox* v. *Wagner,* 111 *Ga.* 148 (36 S. E. 609), *Oklahoma Vinegar Co.* v. *Carter,* 116 *Ga.* 140 (42 S. E. 378, 59 L. R. A. 122, 94 Am. St. R. 112), and *Rounsaville* v. *Leonard Mfg. Co.,* 127 *Ga.* 735 (56 S. E. 1030), the seller did not " store or retain the property for the vendee and sue him for the entire price," but sued for the price in the absence of such condition precedent. In such circumstances an action for the purchase-price will not lie. It was said, however, in the cases of *Oklahoma Vinegar Co.* and *Rounsaville,* that the sellers might have stored and retained the property for the buyers after notice by the buyers that they would not receive the goods, and had this been done the sellers might have brought an action against the buyers for the purchase-price of the goods. We construe the decision of the Court of Appeals in the instant case as adjudicating that, under the facts in the record then before it, no title was shown to have passed to the purchaser, and therefore that the seller could not recover the purchase-price. The language in the headnote, viz., " The seller can not retain the goods and also recover the full price," evidently means that the seller can not retain the goods for himself, that is, as his own property, and also recover the price thereof.

The opinion of the Court of Appeals, after stating that the purchaser declined to receive the goods upon their arrival at destination, quotes from the petition in the case as follows: " 4. That your petitioners according to the terms of said contract thereupon stored said soda fountain for the use of H. C. Tuggle [the purchaser], notified him thereof, and elected to sue for the entire price, $650.00, less the payment of $32.50 made with the order. 5. That your petitioners paid out for freight on said soda fountain and accessories from Philadelphia to Stone Mountain, and storage at Stone Mountain $43.89, and for freight from Stone

Mountain to Atlanta and drayage at Atlanta $8.11. Also they paid out $2.00 for storage of said fountain for the first month, beginning January 5, 1916, and will have to pay out $2.00 for each additional month of storage." The court also quotes from the contract between the parties, as follows: "Should I/we by our neglect or refusal to pay and/or settle as agreed above, thereby wrongfully refuse to perform the condition upon which time is granted, it is agreed that [if] the consideration for the grant of time fails, that the full amount of the purchase-price shall at once be due and payable, and that, in addition to any other remedies you may have at law, you may store and retain the property for me/us, at my/our risk, retaking possession, if already delivered, and proceed, at your option, to recover the entire price, any law, usage, or custom to the contrary notwithstanding." The opinion further states: "Under these allegations [paragraphs 4 and 5] which are denied by the plea, it is a condition precedent to any recovery that the proof show that the goods were stored for the vendee." The final sentence in the opinion, as will be seen, is as follows: "The agreed statement of facts not showing that title to the property had passed to the purchaser, or that the goods had been stored for his use, the sellers could not recover the full purchase-price, and, there being no evidence as to the amount of freight, storage, and drayage paid, the plaintiffs failed to prove their case as laid, the court erred in directing a verdict, and the judgment must be reversed." It clearly appears, therefore, that the Court of Appeals did not expressly or impliedly hold that the plaintiffs could not recover the price of the goods if it had been shown that the sellers, after the purchaser had declined to accept them, had stored or retained the possession of the goods for the use of the purchaser. On the contrary, the strong intimation is, that, had the proof shown that the possession of the goods had been so stored or retained, the sellers could then have recovered the purchase-price. The foregoing statement shows that on the second trial of the case in the superior court the evidence was substantially the same, except that proof was made that the property was stored, as set forth in the statement, in the name of the attorneys for the sellers. A receipt therefor was issued to such attorneys, and notice of the facts given to the purchaser as set out in the letter quoted. The warehouseman testified that he would

not have delivered the goods to the purchaser without the direction of the attorneys for the sellers. The record pertaining to the second trial does not disclose any tender of the goods by the sellers to the purchaser, except the original one made on terms of the buyer's compliance with the contract. The opinion states that "the sellers brought suit under section 4131 of the Civil Code (1910) for the entire purchase-price thereof." The petition, however, shows that the plaintiffs sued for the purchase-price under the terms of the contract. But even if the sellers were not entitled to recover if the suit were founded upon the section of the Code, 4131, providing that if a purchaser refuse to take and pay for goods bought the seller "may store or retain the property for the vendee and sue him for the entire price," there can be no doubt that the sellers could recover the purchase-price under the terms of the contract to the effect, that, if the purchaser should neglect or refuse to accept and pay for the goods, the full amount of the purchase-price should at once be due and payable, and in addition to any other legal remedies the sellers might have they might store and retain the goods for the purchaser at his risk, and recover the entire purchase-price, any law or custom to the contrary notwithstanding.

The evidence on the last trial in the superior court showed that the sellers had stored or retained the possession of the property, not for themselves, but for the purchaser, and they therefore had the right, under the contract, to recover for the full purchase-price. The fact that a receipt was issued by the warehouseman with whom the goods were stored to the attorneys for the sellers, and that the goods would not be delivered to the purchaser without an order from such attorneys — the purchaser having been notified of the fact of such storage,— was a full compliance with the contract with reference to the storage or retention of the property by the sellers for use of the purchaser. Otherwise, that is, if the purchaser should have the right to receive the goods from the warehouseman without the payment of the purchase-price, or without the order or consent of the sellers or their attorneys, the provision of the contract as to the retention of the possession of the goods and the storage thereof would deprive the sellers of any control over them, and would enable the purchaser to obtain them without complying with his contract or making any payment.

It follows that the first certified question is answered in the negative, and that the second question does not call for a categorical answer. The answer to the third question is in the affirmative. The answer to the first part of the fourth question is that the storage of the goods in the manner set forth, and notice thereof as stated, was sufficient to authorize the suit for the entire purchase-price; and as to the latter part of the fourth question, we answer that the sending of the telegram as quoted had the legal effect of limiting the refusal of the purchaser to sign the note, as tendered under terms of the written order, to the one specified ground stated in the telegram, so as to waive and exclude all other grounds of objection of which the purchaser then knew or an examination of the order, and the notes as tendered, might have disclosed. *Cowdery* v. *Greenlee,* 126 *Ga.* 789 (55 S. E. 918, 8 L. R. A. (N. S.) 137), and authorities cited.          *All the Justices concur.*