## WILLINGHAM LOAN & TRUST CO. *v.* MOORE.

W. executed an agreement for the sale of a described lot of land, which was "accepted," the acceptance being signed by M. It was stipulated in the document referred to: "Deed subject to examination." Subsequently to this, in compliance with the agreement on the part of W., the vendor, a warranty deed was executed by A., the actual owner of the property at that time, and was tendered to M., who after examining the deed, made no objection on the ground that his contract entitled him to a deed from W., but did object on the ground that the title of A. was defective, and that A. could not convey good and sufficient title, such as the purchaser was entitled to receive under the contract. *Held:*

1. Having objected to the deed executed by A. solely on the ground that A. did not have a good title, M. could not, after suit brought for specific performance by the vendor, insist that the contract was with W., and that the title should come to him as purchaser through W. alone, and not through some other party. By raising the objection that the title of A. was defective and insisting upon that alone, he waived the other objection.

2. The contract of purchase and sale does not define the kind of title the purchaser was to receive; it merely stipulates: "Deed subject to examination." A good and marketable title was all that the purchaser could insist upon. And whether the prescriptive title, shown by the evidence introduced by the plaintiff, measured up to the test of marketability was, under the evidence, a question for the jury.

3. If there were encumbrances upon the property, these should have been removed before the trial, or the court could have provided for their payment in the decree, so as to protect the rights of the purchaser.

4. Where a contract for the sale of land was headed, "Macon, Georgia, May 6, 1920," and otherwise described the property as "Adams property on Broadway, now occupied by Peerless Paint Company, warehouse in rear of same and sheet-metal warehouse occupied by Merritt Company," such description was not so vague and indefinite as to render the petition for specific performance on the part of the purchaser subject to general demurrer. Prima facie, the property mentioned in the contract will be treated as in Macon, Georgia, in the absence of anything appearing to the contrary.

No. 4775. June 22, 1925.

Equitable petition. Before Judge Graham. Bleckley superior court. January 19, 1925.

Willingham Loan & Trust Company filed in Bleckley superior court its bill against W. L. Moore, J. P. Peacock, and W. H. Peacock, for specific performance of a land-purchase contract. This contract was as follows:

"Macon, Georgia, May 6, 1920. .Received of J. P. & W. H. Peacock and W. L. Moore one thousand dollars ($1,000.00), being part payment for Adams property on Broadway, now occupied by Peerless Paint Company, warehouse in rear of same and sheet-metal warehouse occupied by Merritt Company. It is understood and agreed that the brick walls on the north and east sides dividing this property from the property occupied by the Ford Tractor people is a party wall. Consideration being $35,000.00; terms as follows: $4,000.00 to be paid October first, 1920, and then on first of each October thereafter for six years $5,000.00 is to be paid. All notes bearing interest from October 1st, 1920, at 7%, payable semi-annually. Taxes and insurance to be prorated from October 1st, 1920. Deed subject to examination.

"Willingham Loan & Trust Co. .By C. B. Willingham Jr., Agents."

J. P. Peacock and W. H. Peacock were eliminated as defendants by an order of nonsuit, and the case proceeded as a suit against W. L. Moore alone. He admitted the execution of the contract and the payment of the $1,000 therein receipted for, but denied all other allegations of the bill, and set up as a special defense that the Willingham Loan & Trust Company did not have title to the property described in the contract and could not deliver title to him; that it had never offered to deliver title to the property, nor demanded of him that he perform his part of the contract; that the contract was made subject to the approval of his

counsel, and his counsel had reported adversely on the title; and he asked a judgment against the plaintiff for the $1,000 paid.

The court directed a verdict against the plaintiff on its bill for specific performance, and directed a verdict for the defendant for the $1,000 paid by him under the contract, with interest; and judgment was entered accordingly. A motion for new trial was made by the plaintiff, and was denied; and the plaintiff excepted.

*Jones, Park & Johnston,* for plaintiff.

*Oliver C. Hancock* and *J. M. Hancock,* for defendant.

BECK, P. J. (After stating the foregoing facts.) This same contract has already once been before this court in the case of *Moore* v. *Adams,* 153 *Ga.* 709 (113 S. E. 383). The plaintiff in that case was Elton M. Adams, the petition brought by him for specific performance of the contract alleging that Willingham Loan & Trust Company acted for him and as his authorized sales agent in executing the receipt and contract, and that he was the undisclosed principal for whom the Willingham company acted in the transaction. In that case the Supreme Court held, that, as Adams was not disclosed as a party to the contract, suit could not be maintained in his name. The contract was not considered; and therefore the case of *Adams* v. *Moore* does not have any bearing whatever on the present suit, which is brought by Willingham Loan & Trust Company.

We are of the opinion that the position taken by the defendant in the court below, based on the contention that the contract was not a legal, binding, and enforceable contract, was not supported by evidence of such a character as to authorize the court to direct a verdict in favor of the defendant. In passing upon the question as to whether or not the court erred in directing a verdict in favor of the defendant, all the evidence in favor of the plaintiff must be taken as true; that is, for the purpose of deciding that question. The mere fact that Willingham Loan & Trust Company was not the owner of the property contracted to be sold and did not have title thereto, and was not vested at the time of sale with any legal right to compel the owner of the property to convey in accordance with the terms of vendor's contract, does not, in view of other testimony in this case, render the contract unenforceable. Conceding that under the contract as it stands written, without explanation and without the proof of additional facts,

Moore would have had the right to insist upon a conveyance from the Willingham Company, it is shown by the evidence for the plaintiff that when a deed, executed by the real owner of the property, Adams, was tendered to Moore and demand was made upon him for performance on his part of the contract according to the terms thereof, Moore objected to the deed which was tendered, not upon the ground that he was entitled to a deed from the Willingham Company, who signed the contract, but upon the ground that there were defects in Adams' title; and he stated, moreover, that he didn't care to invest in any property in Macon. Insisting that there were defects in the title, defendant told the vendor or his agents that they must see his attorney at law, naming him; and the vendors and their counsel did go to the attorney at law of the purchaser, who was in charge of investigating the matter and deciding whether or not the title was good; and the attorney of the purchaser based his objection to the deed tendered, not upon the ground that it was not executed by the Willingham Loan & Trust Company, but upon the ground that Adams, the grantor in the deed which was tendered, did not have satisfactory title. Where the purchaser thus insists upon a defect in the title of the party who actually executed and tendered a deed to him, without mentioning or referring to any right to or desire for a deed executed by the Willingham Company, or any preference for such a deed, he can not, after suit is brought for specific performance, in defense thereto urge additional objections which were known to him when the specific objections were made. In the case of *Cowdery* v. *Greenlee*, 126 *Ga.* 786 (55 S. E. 918, 8 L. R. A. (N. S.) 137), it was held: "After a prospective purchaser of land under an executory contract of sale has pointed out his objections to the title and has declined to perform, for specific reasons assigned, he can not, in defense to a suit for damages for a breach of the contract, urge additional objections to the title which the owner was given no opportunity to meet, and which were known to such purchaser at the time the specific objections were made."

But it is also essential to decide, in passing upon the question as to whether or not the court was authorized to direct a verdict in favor of the defendant, whether Adams, the grantor named in the deed tendered, had such title to the property as would enable him to make good and sufficient title to the purchaser. It does

appear from the evidence that the owner did not have perfect paper title; and if the contract had called for perfect, recorded paper title, there was such a defect as would have authorized the court to hold that the purchaser was not bound to accept it. But the contract does not call for perfect title of record; and we are of the opinion that if the vendor tendered good and sufficient marketable title, that of itself would put him in a position to insist upon specific performance on the part of the purchaser. "If the vendor expressly agrees to furnish the purchaser with a perfect chain of title or a title of record, his agreement is not complied with if such title is not furnished, though his title may have been perfected by adverse possession and the lapse of time, since a good documentary title or title of record is of a higher character and more desirable than one dependent on extrinsic circumstances to be established by parol evidence. There are also cases which hold that a purchaser is not required to accept a title based on adverse possession which must necessarily be established by parol proof. On the other hand, the rule prevails in most jurisdictions, where a paper title or title of record is not expressly contracted for, that a title depending on the bar of the statute of limitations may be a marketable title, provided it clearly appears that the entry of the real owner is barred." 27 R. C. L. 502, § 225. And we are of the opinion that the rule stated as prevailing in most jurisdictions is sound. See, in this connection, the cases cited supporting the text. "While a purchaser can not be compelled to take a doubtful title, he will not be permitted to object to a title on account of a bare possibility that it will prove defective. An objection to a title should have some merit in order to defeat the claim of the vendor to the specific performance of the contract of sale. It is not enough that the purchaser should have an honest doubt as to its sufficiency. It is only in cases where the court itself is in doubt as to the title that a specific execution will be refused on the ground that the title is not marketable. But though the court may entertain an opinion in favor of the title, if it is satisfied that that opinion may fairly and reasonably be questioned, it will refuse specific performance. The standard test of the sufficiency of the title is its marketability." 25 R. C. L. 275, § 76.

In the case of *Cowdery* v. *Greenlee,* supra, it was said: "The

purchaser did not stipulate in the written agreement that she was to get a perfect record title. On the contrary, she agreed to buy subject only to the condition that she should have the right to investigate the title and decline to perform if the vendor's title was found to be 'legally insufficient' and she should fail to perfect it within a reasonable time. 'A promise to convey a good title is always implied in an executory contract for the sale of lands, and a purchaser is never bound to accept a defective title, unless he expressly stipulates to take such title knowing its defects.' 26 Am. & Eng. Enc. L. (2d ed.) 106. 'But while a defect in the record title may, under certain circumstances, furnish a defense to the purchaser, there is no inflexible rule that a vendor must furnish a perfect record or paper title.' Id. 107. A title dependent upon adverse possession under color of title is generally held sufficient, if there be no reasonable doubt as to the nature and duration of such possession and the title thereby acquired. Id. 'The nature of the title which a vendor must be qualified to convey where a good title is implied or contracted for is frequently described as a "marketable" title, or one free from reasonable doubt; that is, not only a title valid in fact, but one that can be again sold to a reasonable purchaser or mortgaged to a person of reasonable prudence. . . But while a purchaser will not be compelled to take a doubtful title, the doubt must be more than a bare possibility; it must be a reasonable doubt.' " If there was a question, under the evidence in this case, as to whether prescriptive title, or title acquired by adverse possession, measured up to the test of sufficiency,—that is, whether it was a good and marketable title, that question should have been left to the jury. There was evidence also that a third party had a mortgage on the property. Before the plaintiffs would be entitled to recover, it would be necessary for them to show that the encumbrance has been removed, or that the lienor has released the lien upon the property, or the court may decree so as to provide for the removal of that lien before the purchaser shall be compelled to pay any of the purchase-money. That can be done, as the outstanding mortgage is for a less amount than the purchase-money.

The question is also raised in the brief as to the sufficiency of the description of the property in the contract of sale. It is insisted that "the contract calls for the Adams property located

on Broadway and occupied by certain concerns," and it is argued that this description of the property is not sufficient in law to be made the basis for specific performance. This criticism of the contract is without merit. The contract is headed, "Macon, Georgia," and in the absence of proof to the contrary it will be implied that the property is located in that city. *Bush* v. *Black*, 142 *Ga.* 157 (82 S. E. 530).

We are of the opinion that the issues made under the pleadings and evidence should have been submitted to the jury, and that it was error to direct a verdict in favor of the defendant.

*Judgment reversed. All the Justices concur, except Gilbert, J., absent for providential cause.*