24300. GLOBE AND RUTGERS FIRE INSURANCE COMPANY *v.* ATLANTIC AND GULF SHIPPING COMPANY.

DECIDED MAY 17, 1935. REHEARING DENIED SEPTEMBER 23, 1935.

*Lawton & Cunningham,* for plaintiff in error.
*Connerat & Hunter,* contra.

GUERRY, J. On May 16, 1931, the Globe & Rutgers Fire Insurance Company issued to the Atlantic & Gulf Shipping Company, an insurance policy upon a certain flat-deck lighter, known as A. & G. S. Lighter, No. 2, the property of the Atlantic & Gulf Shipping Company, against loss on account of the dangers and perils of the sea. On May 30, while the lighter was under charter to the Roberts Paving Company of Georgetown, S. C., and while it was being towed on an inland waterway from Georgetown to McClellanville, S. C., with a load of approximately 212 tons of sand, the lighter took a "sheer" and collided with the port bank of the creek, which caused her seams to split, and she sank. On June 4, 1931, as soon as the accident was reported to the assured, it notified (through insurance brokers) the insurer, which arranged to have the lighter examined by C. A. Auld, surveyor of the United States Salvage Association, to ascertain the nature and extent of the damage sustained. Auld examined the lighter both before she was floated and after she was placed in dry dock, and reported the damage found and the recommendations in regard to repairs. On or about June 17, 1931, the lighter was floated and towed to dry dock at Charleston, where she underwent certain repairs made by the Charleston Dry Dock Machine Company. Auld, in behalf of the insurer, examined the lighter while in dry dock at Charleston, but did not at that time make an internal examination of the lighter, as the inside of her hull was covered with wet slime and mud, and for that reason he did not discover the warped and hogged condition of the lighter. The amount of repairs made at Charleston, including salvage costs, was $1175.53, for which amount the insured made claim. On July 8, 1931, the lighter arrived in Savannah and her owners discovered that she had been "hogged," i. e. humped up in the middle and down at the ends. On July 9, the owners advised Carswell Company, insurance brokers, who had procured the insurance, of their discovery and in the letter containing the bill of $1175.53, which did not include damages from "hogging" the owners stated that the hogging claim was "left in abeyance until actual damage, if any, can be ascertained." The insurer thereafter mailed to the insured a check to cover the original claim for $1175.53 which was returned to insurer on the ground that the insured did not want to prejudice his right to make further claim for damages in reference to the hogging claim, by acceptance of

the check. The check was returned to the insured, the insurer stating that "in so far as any further proper claim which may be presented in connection with this accident, we wish to advise that the assured may accept our check without prejudice, and that if and when further claim is presented to us, the same will be given our consideration, and will be paid by us if the same is covered under the terms and conditions of the policy on the lighter No. 2." On October 6, another claim, which was for the hogged condition of the lighter, was presented to the insurers, and on December 5 they rejected the claim because (1) the damage was not repaired, and (2) the lighter was inherently defective in construction and unseaworthy. This suit is the outgrowth of that refusal.

The defendant answered the action, defending principally upon three theories, to wit: (1) that the lighter was insured only against perils of the sea, and that the sinking of the lighter was not due to a peril of the sea; (2) that the vessel was unseaworthy and the warranty of seaworthiness was breached, and (3) that the damages which the plaintiff sought to recover were only estimated damages and could not be recovered under the terms of the policy. A verdict was returned in favor of the plaintiff for the full amount sued for and attorney's fees; and the defendant excepts to the overruling of its motion for new trial.

■ It is one of the contentions of the defendant in error that the plaintiff having refused to pay the claim on the specific grounds that (1) the damage was not repaired, and (2) the lighter was inherently defective in construction and unseaworthy, that it can not after suit has been filed defend on the further ground that the accident was not caused from a peril of the sea. To this we can not agree. "The rule which prevents one who has given a reason for his conduct and decision in a matter from placing his conduct upon another and different ground after litigation has begun is but an application of the principle of estoppel in pais, and applies only where his conduct has caused another to act respecting the matter to the injury and detriment of the latter, and where the latter would be placed at an inequitable disadvantage should the former be allowed to rely upon a ground other than that urged as a reason for his conduct and decision in the matter." *Union Brokerage Co.* v. *Beall Bros.,* 30 *Ga. App.* 748 (119 S. E. 533) ; *Carter-Moss Lumber Co.* v. *Lomax,* 30 *Ga. App.* 718 (119 S. E. 534) ; *Ga. Wool*

*Stock Co.* v. *Trans-Atlantic Watch & Clock Co.,* 33 *Ga. App.* 465 (126 S. E. 902); *Riverside Academy* v. *Urigh,* 33 *Ga. App.* 455 (126 S. E. 900); *Houser* v. *Vose,* 33 *Ga. App.* 451 (126 S. E. 869); *Kaufman* v. *Young,* 32 *Ga. App.* 135 (122 S. E. 822); *Frank & Meyer Neckwear Co.* v. *White,* 29 *Ga. App.* 694 (116 S. E. 855); *Winer* v. *Flournoy Realty Co.,* 27 *Ga. App.* 87 (107 S. E. 398); *Fruit Dispatch Co.* v. *Petropol,* 25 *Ga. App.* 839 (105 S. E. 48); *Montgomery* v. *Lester,* 25 *Ga. App.* 660 (104 S. E. 28); *Cornelius* v. *Anderson,* 25 *Ga. App.* 182 (102 S. E. 925); *Swift* v. *Moore,* 15 *Ga. App.* 254 (82 S. E. 914); *Ewing Bros.* v. *Bowser,* 14 *Ga. App.* 305 (80 S. E. 693); *Gavan* v. *Norcross,* 117 *Ga.* 356 (43 S. E. 771); *Atlanta Trust & Banking Co.* v. *Close,* 115 *Ga.* 939 (42 S. E. 265); *Cowdery* v. *Greenlee,* 126 *Ga.* 786 (55 S. E. 919, 8 L. R. A. (N. S.) 137). This principle being based upon estoppel in pais, it is well to state that "estoppels . . are never resorted to except where it would be more unjust and more productive of evil to hear the truth than to forbear the investigation." *Patterson* v. *Collier,* 75 *Ga.* 419 (54 Am. R. 472). The defendant did actually defend the present action on the grounds of refusal stated when the claim was rejected, and the other defense set up is not inconsistent with those stated at its refusal to pay the claim. The insured has not been caused to act to his injury because of the failure to state such additional ground at the time of the refusal of the claim, nor would he be placed at an inequitable disadvantage should the insurer be allowed to rely upon the ground other than that urged as a reason for its conduct and decision in the matter.

■ The main question argued before this court calls into question the correctness of the following charge of the court to the jury: "My view of the law with reference to this matter is that the payment of the $1075 concluded the defendant from claiming that the occurrence was not covered by the policy; that is to say, that it was not a peril against which the policy insured, and that that conclusion as to that point extends to any other damage which may have been caused by the same occurrence and which was a part of the injury sustained at the time of that occurrence, though it did not appear or become apparent until after the negotiations had been begun, with reference to the settlement. In other words, my view is that there is a liability for this additional damage to the amount of the damage that has been proved, and if that dam-

age and that amount of the damage amounts to the necessary repairs to put the lighter in the condition it was before the occurrence. The defendant, of course, has the right, under my view, to claim that it was not a part of the occurrence, or a result of that occurrence, and they have a right to contest, as they have contested, the amount that is claimed in the petition." This charge effectively withdrew from the consideration of the jury the defenses of the defendant that the ship was unseaworthy and the accident was not caused from a peril of the sea. We have diligently searched the reports of this and other States and have found no authority for the position taken by the court in its charge to the jury, that a payment of a claim under a policy thereafter estops the insurer from setting up, as a defense to another claim made thereunder for damage caused by the same accident, that the occurrence was not covered by the policy. If there had been only one claim for damages and the insurer paid part of it without objection, this certainly might have been a waiver of its rights as to liability for the entire amount; but here two separate claims were presented, covering damages of a different kind and character. Certainly, if the insurance company issued the policy with knowledge of the defective construction of the lighter, such conduct would amount to a waiver of a warranty made in the policy that the lighter was properly built, with reference to any future claims made thereunder; but no such notice is set up here. The law favors the settlement of claims without litigation, and courts should not favor rules which would penalize and punish, and place a premium on the action of an insurance company in settling a claim under a policy. Take this, for example: An insurance company issues a policy of insurance covering a house and all its contents. Part of the house catches fire and burns, destroying a certain desk therein of a nominal value. Although there may have been a breach of warranty or violation of some of the provisions of the policy by the insured, the insurance company, because of the nominal amount involved and its willingness to do right, agrees to and does pay the claim. Several days thereafter the insured discovers that the desk contained certain valuables covered by the policy which he did not know of at the time he made claim upon the insurer, which were destroyed, and he thereupon makes claim for a large amount. Would it be said that because of the charity and good faith of the insur-

ance company it had forfeited all its rights to contend that the policy was void? We think not. Certainly there can not be said to be an estoppel on the part of the insurance company, for it has made no admissions "upon which other parties have acted, either to their own injury or the benefit of the persons making the admissions." Code of 1910, § 5736 (Code of 1933, § 38-114). It can not be asserted that the insurance company derived any benefit from its admission of liability for the first claim, or that the insured suffered any detriment therefrom. The converse would seem to be true. We are unwilling to hold that the insurance company by its action has waived its rights. However, if such were held to be the law, we are of the opinion that the company by its letter sufficiently reserved its rights, for it specifically wrote: "if and when further claim is presented to us, the same shall be given our consideration and will be paid by us *if the same is covered under the terms and conditions of the policy on lighter No. 2.*" Nor do we think the renewal of the policy and acceptance of premiums after the loss had occurred would estop the insurer. It might have such effect as to any future accidents happening under the policy, but would not revert to an accident already happened. We think the charge of the court was error, and there should be another investigation of the case.

■ The next and last point we deem it necessary to deal with is the contention of the insurer that the plaintiff can not recover estimated damages. The policy provides for a survey to be made for an estimation of the damages sustained by the vessel, one surveyor to be appointed by the insurer and one by the insured. In case of disagreement it is provided that the two surveyors appointed may select an umpire. It is further provided that this survey is a condition precedent to recovery under the policy. The policy then provides that "If after such survey the assured shall elect not to repair the vessel, there shall be no liability under this policy (excepting where the cost of recovering the vessel plus the estimated cost of repairs specified by the surveyors as for account of the insurers, exceeds the insured value)," etc. The insurer contends that in order for its liability to attach for estimated damages, its surveyor must estimate that the cost of repair would exceed the insured value of the vessel. This construction would certainly seem to be a method of forfeiture of liability under the policy in the

event the actual damages exceed the insured value of the vessel and the owners did not wish to expend the extra amount in putting the vessel back into condition, for the insurers could merely refuse to appoint a surveyor and then contend that the estimate of the surveyor for the insured was not "for the account of the insurers." However, without making any construction of the provisions of the policy, but accepting that of the insurer as being proper (which we do not decide), we think the evidence was sufficient to show that both surveyors, that is, Mr. Elmgren and Mr. Auld, did agree on the amount of money necessary to fix the vessel, which together with the claim originally paid exceeded the insured value thereof, although they did disagree as to what caused the damage. For reasons stated in the second division of this opinion the judgment of the trial court in overruling the motion for new trial is

*Reversed. Broyles, C. J., and MacIntyre, J., concur.*