## 29665.   LANGFORD *v.* BERRY.

Decided October 3, 1942.   Rehearing denied October 22, 1942.

*J. C. Savage,* for plaintiff in error. *William G. Killard,* contra.

GARDNER, J. (After stating the foregoing facts.) 1. It is well established that before a real-estate broker has earned his commission he must find a purchaser who is ready, willing, and able, and who does actually offer to purchase, unequivocally and unconditionally, on the terms of the owner's offer to sell. See in this connection *Winer* v. *Flournoy Realty Co., 27 Ga. App.* 87 (2) (107 S. E. 399), and cit. In the case before us, from the agreement between Langford and Berry it appears that Langford agreed to give Berry the exclusive right to sell the property within 45 days from January 12, 1942. In the agreement to sell there is no mention of the kind and character of title Langford was to convey to the purchaser. The contract of sale between Berry and Maziar does stipulate that "vendor shall furnish good and marketable title to said property, and purchaser shall have a reasonable time in which to investigate same. In the event the title is objected to the vendor shall be furnished with a written statement of all objections and be allowed a reasonable time thereafter in which to furnish a valid title. It is agreed that such

papers as may be legally necessary to carry out the terms of this contract shall be executed and delivered by the parties at interest as soon as validity of the title to said property has been established." We think this provision of the contract of sale bound Langford beyond the terms of his agreement to sell. It obligated him to extend the time of the consummation of the sale beyond the 45 days stipulated in his agreement to sell. It substituted for the 45 days "a reasonable time." What is a reasonable time for the execution of a contract is generally a jury question, under the circumstances of each particular case. See in this connection *Bearden Mercantile Co.* v. *Madison Oil Co.,* 128 *Ga.* 695 (3) (58 S. E. 200): "When a contract fixes no time for performance, it is to be construed as allowing a reasonable time for that purpose; and what is a reasonable time is a matter of fact to be determined by a jury under all of the circumstances of the case."

While it is true that both this court and the Supreme Court have held: "Where there is no express stipulation for a particular sort of title, such as a perfect record title, or a title subject to the purchaser's approval, ordinarily the only implication in an executory contract for the sale of land is a promise to convey a 'good title.' This term imports no more than a marketable title, or one free from reasonable doubt; that is, not only a valid title in fact, but one that can again be sold to a reasonable purchaser, or mortgaged to a person of reasonable prudence" (*Winer* v. *Flournoy Realty Co.,* supra), the same authority holds to this effect: "Thus, where, as in the instant case, the terms upon which the property is listed with the broker are silent as to the sort of title to be furnished, the broker and the prospective purchaser would be unauthorized to insert in the memorandum or 'binder' to close the sale a provision conditioning the obligation to buy upon 'purchaser's approval of title,' and such an unauthorized stipulation would ordinarily amount to such a substantial variance in the terms of sale as would defeat the broker's right to commission."

In view of the foregoing authority, when Berry entered into a contract with the prospective purchaser, giving Maziar the privilege of a reasonable time in which to file written objections, without limitation of any sort as to what kind of objections, or

that they would be made within the 45 days time within the limitation of the agreement on the part of Langford to sell, and that in addition required Langford, within a reasonable time, to remove such objections as Maziar might in his discretion bring forth, Berry injected into the contract of sale as between him and Maziar a substantial variance in the terms of the agreement between Langford and Berry. It will be noted in the contract between Berry and Maziar it is stipulated that Langford is to execute and deliver such papers as are necessary "as soon as validity of the title to said property has been established." The contract between Berry and Maziar fixes no time within and no method by which the validity of such title is to be established. It must be concluded, under all the facts of the case, that under the agreement of Langford with Berry authorizing the sale of his property it was to be consummated within the limitation of 45 days. The petition nowhere alleges that Langford was offered the $1000 for his equity and that he refused to execute good title to the property within 45 days. It is true that Berry offered the contract between himself and Maziar. This might have bound him, Berry, to Maziar, by accepting the $100 in earnest money, but it did not bind Langford.

The case is very similar to *Emery* v. *Atlanta Real Estate Exchange*, 88 *Ga.* 321, 326 (14 S. E. 556). There the consideration was involved, here the title. In the *Emery case* the court said: "By receiving $10 from the purchaser to bind the bargain proposed by them, and giving a receipt therefor, they had perhaps bound themselves, but they could not bind the seller to the terms of credit which they offered the purchaser, without the seller's authority or consent." In that case, on page 325, the court observed: "We think it is also plain that, in order to bind the seller, the transaction would have to be completed, or at least the money realized, within the limited time. Otherwise the seller would lose the benefit of his [time] limit. Suppose, for example, after the bargain became binding, the buyer should refuse to carry it out. Then the seller would have to await the slow outcome of a suit to enforce the sale. Such a contingency is provided against in this contract." The extension of the time limit to a "reasonable time" further than the 45 days limit invites the very obstacles dealt with in the *Emery* case and provided against, by

a very specific, definite time limit, the 45 days in which to conclude the transaction.

We think this case is controlled by the principle announced in *Van Winkle* v. *Harris*, 137 *Ga.* 43 (72 S. E. 424), as follows: "Where an agent was 'authorized and directed' by the owner of a described tract of land to 'make sale' of it for $5200, 'one thousand [dollars] of which was to be paid in cash,' the agent under such authority did not have the right to bind the owner by a written contract with the plaintiff, wherein it was provided: 'This agreement is made subject to right of purchaser to investigate titles to the property, and to decline to perform if titles of the vendor be legally insufficient and she fails to perfect the same within a reasonable time. . . Cash payment to be made when vendor complies with her obligation to make satisfactory showing as to title.'" We have compared the case at bar with the facts in the *Van Winkle* case and fail to see any substantial difference. See *Parker* v. *Stubbs*, 139 *Ga.* 46 (76 S. E. 571); *Larned* v. *Wentworth*, 114 *Ga.* 208 (39 S. E. 855); *Gray* v. *Lynn*, 139 *Ga.* 294 (77 S. E. 156).

Without dealing with the other questions raised by the demurrer the question above discussed is controlling. At best the contract of Maziar with Berry was only an offer to purchase on different conditions as to time when Langford agreed to sell, and since the petition failed to show that Langford accepted such offer to purchase, or waived any of the provisions of his agreement to sell, the petition failed to set out a cause of action. The court erred in overruling the demurrer.

*Judgment reversed.* *Broyles, C. J., and MacIntyre, J., concur.*