36803. WELDON *v.* LASHLEY.

762

Decided October 4, 1957—Rehearing denied
October 21, 1957 and December 12, 1957.

*Robert W. Spears, Wm. G. Grant, James C. Grizzard,* for plaintiff in error.

*Zachary & Hunter, John C. Hunter, Harry F. Walters, W. E. Zachary,* contra.

Felton, C. J. 1. The evidence authorized a verdict for the plaintiff. The contract of listing was brief and contained the following provisions: "Property Location: 18th Dist., Land Lot 109, DeKalb Co., Ga.; Lot Size: 15 acres±; Owner: Miss Marjorie Weldon . . . How Paid: 10% Commission . . . Sale Price: $2500 per acre." The offer to purchase submitted by W. W. Lively through the plaintiff contained a description of the property and a recited consideration of $2500 per acre to

be paid in cash at closing. The offer also contained the following special stipulation: "It is agreed between the parties hereto that the number of acres in the above described property shall be determined by a survey of same furnished and paid for by the purchaser, which acreage so found shall constitute the basis for computing the total sales price of the property at twenty five hundred & no/100 dollars ($2500) per acre." It is contended by the defendant that because of this special stipulation the offer to purchase was at variance with the contract of listing and, therefore, she was not bound under the contract of listing to accept the offer. The defendant contends that the variance between the contract of listing and the offer to purchase is that the special stipulation in the offer to purchase called for a survey to be furnished and paid for by the purchaser in determining the exact amount of land contained in the tract owned by the defendant and that the sale price of $2500 per acre would be based on such survey, whereas, the contract of listing contained no reference to such a survey.

The exact amount of land comprising the defendant's tract was not set out in the contract of listing but was listed as 15 acres more or less. While the written contract of listing did not contain any reference to a survey being made, the defendant's testimony clearly showed that there was an understanding between the plaintiff and the defendant that a survey would have to be made in order to ascertain the exact amount of land contained in the tract and, therefore, the exact amount of the purchase price based on a consideration of $2500 per acre. Since the exact acreage of the defendant's tract of land was not recited in the contract of listing but was recited as 15 acres more or less, and since the sale price was on an acreage basis, we do not see how the exact total purchase price for the entire tract could have been ascertained other than by a survey. Since the parol understanding between the plaintiff and defendant did not contradict and was not inconsistent with the contract of listing, such parol understanding was admissible to show the entire contract between the plaintiff and defendant. See, *Renfroe* v. *Alden*, 164 *Ga.* 77 (1) (137 S. E. 831).

The defendant testified in part as follows: "Q. In this answer your lawyer filed for you you state in there that there was noth-

ing said about having a survey made so as to determine what the aggregate price of your property would be. A. Repeat that, please. Q. That there had never been an agreement on your part to have the property surveyed. A. He said that would come later. Q. Who said that? A. Mr. Lashley. He said there would have to be a survey. I said I knew that. Q. Oh, you knew that? A. You always have to have it surveyed before you sell it, don't you? Q. If you had a brokerage contract, there was not but one contract. This is an offer, and this is a contract between you and Mr. Lashley, and if you had this contract between you and Mr. Lashley that called for 15 acres, more or less, that's the only thing indefinite about that contract, isn't it? A. Yes. Q. And if there was 16 acres actually in that tract by a survey and you were going to sell it at 2500 or 3500, whatever you say you were going to sell it for, you would want that figure interposed by the exact number of acres or fraction of acres. A. Yes. Q. That's what you intended. Likewise, if it turned out to be by survey less than 15 acres, you wouldn't expect the purchaser to pay you for more than that amount of acreage or fraction of acreage than the price you were selling it for. A. I don't understand. Certainly he would get his commission, naturally. Q. If it turned out to be 14 acres, for instance, you wouldn't expect the purchaser to pay you more than 14 times the purchase price per acre, would you? A. I wouldn't expect him to pay for 16, or something like that, of course not. Q. You would expect him to pay whatever it was, 15 more or less. A. Whatever it was. We would go by the survey. Q. And you had a conversation with Mr. Lashley about the survey, and you understood it was to come later. Is that right? A. That's right. Q. And this was satisfactory to you, wasn't it? A. Yes. Q. This is one sent back to you by Mr. Lashley, and I'll ask you to refer to the special stipulations in that offer to purchase, please. If you will, read that special stipulation to refresh your recollection. A. 'It is agreed'— Q. No, read it to yourself to refresh your recollection. A. Oh, yes, but that has no bearing on it, because it says $2500, and I had said 3500. Q. If you say that you and Mr. Lashley had a conversation to the effect that a survey would come later, what did you find objectionable about the

special stipulation in this offer? A. I found nothing wrong with it except the price. Q. Nothing wrong with it but the price. A. It was $2500 instead of 3500. Q. As far as the survey is concerned, you didn't make any objection to that, because that was in line with your previous conversation. A. I knew a survey would have to be made. He even tried to talk me into selling it for $2000 an acre. He said, 'I could swing it myself if you could do that.' I said, 'I haven't the slightest idea of selling at less than $3500 an acre.' Q. Just to be sure I understand you, you say that it was the price that was objectionable and not the survey. You knew that survey had to be made. A. I knew a survey had to be made. Q. And it was the price per acre that you objected to? A. The price. And I knew if anything came up we would have to thrash that out, but he said we could do that very simply. Q. It was the price per acre that caused you to refuse this contract? A. Yes." From this evidence the jury was authorized to find that the offer to purchase was in accordance with the contract of listing and the parol understanding between the plaintiff and defendant and that the reason the defendant refused to accept the offer was not because of the stipulation providing for a survey but was because of the purchase price of $2500 per acre.

It is contended by the plaintiff in error that, while the defendant admitted that she realized a survey would be necessary in order to ascertain the exact purchase price of the entire tract of land, such did not mean that the survey would be one made at the instance of the purchaser. The plaintiff in error further contends, that under such stipulation the defendant would be bound by a survey furnished by the purchaser whether such survey was a correct one or not. We do not agree with such contentions. The gist of the stipulation in the offer to purchase concerning the survey is that the proposed purchaser would bear the cost of such survey. Under such stipulation the purchaser would have to furnish a correct survey of the tract of land and, if a survey had been offered by the purchaser which was incorrect, the seller would have had the clear right to challenge the accuracy thereof and would not be bound by a survey which did not correctly show the amount of land contained in the tract. This was not a proposal to leave the survey to arbitration:

Assuming for the sake of argument only that the provision in the special stipulations in the offer to purchase providing for the survey was not authorized by the contract of listing, the plaintiff in error by virtue of estoppel is precluded from insisting that because of such variance she was entitled to a verdict. The plaintiff in error testified that the only reason she rejected the offer to purchase was the purchase price per acre. Since, at the time the offer to purchase was presented to her, the only objection the plaintiff in error had thereto was the purchase price, and since she did not base her rejection of such offer on any other variance between the contract of listing and the offer to purchase, she is estopped to insist upon such variance as a reason for defeating the plaintiff's claim for commission. "If this was the sole ground of objection assigned by the owner at the time of such refusal, other grounds of objection then known to her were waived, and would not avail her as a defense to an action for the commission." *Fenn* v. *Ware & Owens*, 100 *Ga.* 563 (1) (28 S. E. 238). See also *Cowdery* v. *Greenlee*, 126 *Ga.* 786 (1) (55 S. E. 918, 8 L. R. A. (NS) 137); *Tuggle* v. *Green & Sons*, 150 *Ga.* 361, 370 (104 S. E. 85); *Willingham Loan & Trust Co.* v. *Moore*, 160 *Ga.* 550 (128 S. E. 751); *Winer* v. *Flournoy Realty Co.*, 27 *Ga. App.* 87, 88 (2) (107 S. E. 398); *Globe & Rutgers Fire Ins. Co.* v. *Atlantic & Gulf Shipping Co.*, 51 *Ga. App.* 904, 906 (1) (181 S. E. 310). The principle of estoppel by conduct set out in the *Globe* case, supra, applies equally as well in a case where such conduct causes a person not to act as it does where such conduct causes a person to act. In the instant case when the offer to purchase was presented to the plaintiff in error, she made no objection concerning the provision in the offer pertaining to the survey and made no objection as to any other provision in the offer to purchase except as to the purchase price per acre. Had she raised such other objections the broker might have been successful in negotiating with the prospective purchaser in eliminating such objections from the offer to purchase, but since the plaintiff in error made no such objections, she prevented the broker from taking such action and this was to his detriment.

Neither on the trial of the case nor on the appeal here did the plaintiff in error insist that there was a variance between

the contract of listing and the offer to purchase because of the provision contained in the offer to purchase that, "It is agreed that the vendor shall furnish good and marketable title to said property and purchaser shall have a reasonable time in which to examine same. In the event title is objected to, the vendor shall be furnished with a written statement of all objections and be allowed a reasonable time thereafter to furnish a valid title." Assuming for the sake of argument only but specifically not deciding that such provision in the offer to purchase was not authorized by the contract of listing, for the reasons stated above as to the provision concerning the survey, the plaintiff in error was estopped to assert such variance to defeat the plaintiff's action for his commission.

No question of waiver or estoppel was presented in any of the cases cited in the dissent.

The evidence authorized the jury's verdict.

2. Special ground 4 of the amended motion for a new trial was a reiteration of the general grounds and was without merit for the reasons given in division 1 of the opinion.

Special ground 5 of the amended motion complains of the following charge: "It is a question of fact for you to determine —whether or not that clause, if it was not authorized by previous agreement, either in the contract of listing or by verbal supplemental agreement, was the cause of the defendant's rejecting the offer, if it was rejected by her. To state it a different way: If this clause was inserted in the offer to buy and not authorized to be inserted in it by previous agreement between the plaintiff and defendant, then you would look to see whether or not that clause was the basis, or whether the defendant objected to that clause being put in there and for that reason declined to accept the offer, if the offer was made. If the plaintiff was not authorized to put that in there and the defendant did not agree to it at the time the offer was submitted to her, then it would not be binding on her, and it would not be an offer made under the terms of the listing, and the defendant would not be bound to accept it." The defendant contends that the charge was error because the evidence did not authorize a finding that the plaintiff and defendant had agreed that a survey would be necessary. The ground is without merit as clearly indicated by the defendant's own testimony quoted above.

The court did not err in denying the motion for a judgment notwithstanding the verdict and in denying the amended motion for a new trial.

*Judgments affirmed. Gardner, P. J., Townsend, Carlisle and Nichols, JJ., concur. Quillian, J., dissents.*

QUILLIAN, J., dissenting. I am constrained to dissent from the majority opinion. The rule is well settled that for a real-estate broker to earn his commission he must procure a purchaser ready, able and willing to buy his patron owner's property on the terms the patron offers to sell. *Langford* v. *Berry*, 68 *Ga. App.* 193 (22 S. E. 2d 349); *Selton* v. *Dowling*, 79 *Ga. App.* 690 (2) (54 S. E. 2d 763). The buyer's acceptance of the owner's offer, "to be binding, must be absolute, complete, and unequivocal, and identical with the terms of the offer." *Dukes* v. *Gore & Co.*, 11 *Ga. App.* 743, 744 (76 S. E. 365). If the prospective purchaser engrafts conditions upon his agreement to buy, he does not accept the owner's offer to sell, but makes a counter-offer, which is not binding until accepted by the owner. *Gray* v. *Lynn*, 139 *Ga.* 294 (77 S. E. 156). In the case cited the offer was made by the purchaser, and the buyer's acceptance was not upon the exact terms of the offer. It was held not to be an unconditional acceptance. Whether the seller or buyer makes the offer, the principle is the same.

The instrument held in the majority opinion to be an acceptance of the offer, conditioned the purchaser's acceptance of the owner's offer to sell upon a survey being made, reserved in the purchaser the right to select the surveyor, and stipulated that the acreage of the parcel of land was to be determined by such surveyor.

The acreage was material in fixing the purchase price, since the tract was to be sold by the acre. The criteria of the acreage was likewise important. The owner was within her rights in refusing to have the acreage of her land determined by a surveyor chosen and paid by the purchaser without even being apprized of the surveyor's identity, qualifications, and character.

That parties may select a surveyor as the arbiter of land lines and the size of a parcel of land is recognized in *Cliett* v. *Metropolitan Life Ins. Co.*, 195 *Ga.* 257, 265 (24 S. E. 2d 59). The selection of the arbiter of any matter is of consequence in its decision.

The authorization of the realtor, which constituted the owner's offer to sell read: "Lashley Realty Co., Rutland Bldg. Property location 18th Dist. Land Lot 109, DeKalb Co., Ga. Lot size 15 acres +; Owner Miss Marjorie W. Weldon; How paid 10% Commission; Sale price: $2500 per acre; In consideration of your acceptance of the terms of this agreement and of your promise to list, to offer for sale and to endeavor to sell my property hereinafter described, to advertise the same in such manner as you may deem advisable and further, to enlist in this behalf the best efforts of your organization in its ordinary course of business I hereby give and grant Lashley Realty Co. for a period of one month from the date of this instrument the exclusive right and authority to sell the property herein described, for the price and upon the terms herein set forth; Date March 3, 1956; signature of owner, Marjorie W. Weldon."

The purported acceptance procured by the realtor contained the clause: "It is agreed between the parties hereto that the number of acres in the above described property shall be determined by a survey of same furnished and paid for by the purchaser, which acreage so found shall constitute the basis for computing the total sales price of the property at twenty five hundred & no/100 dollars ($2,500) per acre." Also a clause reading: "it is agreed that the vendor shall furnish good and marketable title to said property and purchaser shall have a reasonable time in which to examine same, in the event title is objected to, the vendor shall be furnished with a written statement of all objections and be allowed a reasonable time thereafter to furnish a valid title."

Under the holding in *Gray* v. *Lynn*, 139 *Ga.* 294, supra, the acceptance was not unconditional, indeed, amounted to no acceptance of the owner's offer to sell.

It was held in *Van Winkle* v. *Harris*, 137 *Ga.* 43 (1) (72 S. E. 424): "Where an agent was 'authorized and directed' by the owner of a described tract of land to 'make sale' of it for $5,200, 'one thousand (dollars) of which was to be paid cash', the agent under such authority did not have the right to bind the owner by a written contract with the plaintiff, wherein it was provided: 'This agreement is made subject to right of purchaser to investigate titles to the property, and to decline to perform if titles

of the vendor be legally insufficient and she fails to perfect the same within a reasonable time. . . Cash payment to be made when vendor complies with her obligation to make satisfactory showing as to title.' "

No contract was signed by the defendant. The plaintiff made the contract with the prospective purchaser. A part of the contract was the receipt given the purchaser by the defendant. It read: "Received of W. W. Lively the sum of five hundred & no/100 dollars, through_____agent, as earnest money to remain with agent during the term of said contract, and subject to acceptance by the owner of said proposition, and it is to be returned to purchaser in the event proposition is declined. This 12 day of March 1956. /s/ G. D. Lashley, Lashley Realty Company, Decatur, Ga."

The receipt stated in terms as plain as could be expressed in the English language, that the trade was tentative, and would not be binding on the plaintiff until accepted by her.

The paper procured by the plaintiff was merely an offer on the part of the prospective buyer to purchase the property on other terms than those on which the defendant was authorized to sell it.

The evidence submitted on the trial did not authorize a finding that the plaintiff procured a buyer ready, able, and willing to buy the defendant's property on the terms he was authorized to sell the same.

I am cognizant of the fact that the defendant testified that her only reason for rejecting the counter-offer made by the prospective purchaser procured by the plaintiff realtor was that the price was not that at which she had offered to sell. It made no difference whether the reason she gave for not accepting the purchaser's offer was true or false, the fact remains that she was under no obligation to accept the offer, because it was not on the same terms she had offered to sell the property.

I am impressed that the majority opinion confuses the principles relating to the proof of a cause as laid in a petition and the interposition of a defense. While in some instances a defense not pleaded may be interposed by evidence unobjected to, as in the case of *Franklin Savings & Loan Co. v. Branan*, 54 *Ga. App.* 363 (2) (188 S. E. 67), the ancient rule still stands that a plaintiff, to be entitled to recover, must prove the case

laid in his petition, and not another. *Dixie Ornamental Iron Co. v. Parrish,* 91 *Ga. App.* 11 (84 S. E. 2d 716) ; *Hightower* v. *Scarborough,* 79 *Ga. App.* 342 (53 S. E. 2d 726). A clear pronouncement of the rule is found in *Cunningham* v. *Avakian,* 192 *Ga.* 391, 394 (15 S. E. 2d 493) : "The general rule is that the plaintiff must recover, if at all, on the case made by his pleading, and he can not recover where the evidence fails to support the cause declared on, even though a different cause of action may appear from testimony admitted without objection."

Here the proof of an offer which the defendant was bound to accept was essential to the proof of the plaintiff's case as pleaded.

Evidence that the plaintiff obtained an offer from a prospective purchaser; that the offer was not on the same terms the defendant had authorized him to sell her property; that though she had a right to reject the counter-offer without assigning any reason, the reason she did give for refusing to accept it was not true, really proved no case at all, and certainly not the case alleged in the petition. It will be observed that the petition alleged that the plaintiff, a realtor, obtained a buyer ready, able, and willing to buy the defendant's property on the terms she had authorized him to sell.